PEOPLE v TERRELL

Docket No. 321573. Submitted September 1, 2015, at Detroit. Decided
     September 29, 2015, at 9:05 a.m. Leave to appeal sought.
  James Anthony Terrell was convicted by jury in Wayne Circuit
     Court of three counts of assault with intent to do great bodily
     harm less than murder, and one count each of resisting or
     obstructing a police officer, felon in possession of a firearm
     (felon-in-possession), and possession of a firearm during the
     commission of a felony (felony-firearm). The circuit court, James
     A. Callahan, J., originally sentenced defendant as a fourth-
     offense habitual offender to prison terms of 30 to 50 years for each
     assault conviction, 5 to 15 years for the resisting or obstructing
     conviction, 2 to 5 years for the felon-in-possession conviction, and
     2 years for the felony-firearm conviction. Defendant appealed.
     The Court of Appeals affirmed defendant's convictions in an
     unpublished opinion per curiam but vacated his sentences and
     remanded for resentencing because a conviction had been counted
     twice when determining defendant's habitual offender status and
     the trial court had failed to articulate objective and verifiable
     reasons for departing upward from the recommended sentence
     under the sentencing guidelines. The trial court resentenced
     defendant as a second-offense habitual offender to prison terms of
     95 months to 15 years for each of the assault convictions, 1 to 2
     years for the resisting or obstructing conviction, 5 to 7½ years for
     the felon-in-possession conviction, and 2 years for the felony-
     firearm conviction. Defendant moved for resentencing on the
     basis of errors in scoring his offense variables (OVs) and prior
     record variable (PRV) 7, the failure of the amended judgment of
     sentence to reflect a waiver of fees and costs, and the trial court's
     alleged vindictiveness at resentencing. The trial court denied
     defendant's motion for resentencing, but directed that defen-
     dant's judgment of sentence be again amended to reflect a waiver
     of fees and costs. Defendant appealed.

          The Court of Appeals held:

          1. Defendant's properly scored OVs exceeded the point level of
     OV Level VI, even if the scores for OVs 3 and 4 resulted from
     judicial fact-finding. Defendant claimed that OVs 3, 4, and 9 were

improperly scored according to the Supreme Court's decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), which held that mandatory application of Michigan's statutory sentencing guidelines was unconstitutional and ruled that the guidelines were to be advisory only. Defendant argued that the scores for OVs 3, 4, and 9 were not supported by the jury's verdict and had not been admitted to by him. However, defendant's OVs totaled 70 points without the scores from OVs 3, 4, or 9. Because OV Level VI begins with an OV score of 75, if any one of the three challenged OVs were supported by the jury's verdict, defendant's OV total would exceed 75 points. Defendant's OV 9 score of 10 points was supported by the jury's verdicts because the facts showed that defendant shot at three police officers, and the verdicts of guilty on the three charges of assault with intent to do great bodily injury less than death indicated that those three police officers were "victims" under MCL 777.39(1)(c); that is, the three police officers were in danger of physical injury or death as a result of defendant's conduct. With defendant's OV 9 score, his OVs totaled 80 points and placed him at the same level of VI under which he was previously sentenced. The remaining OVs defendant challenged— OVs 3 and 4—are irrelevant under this analysis because with or without them, defendant's OV score exceeded the total number of points necessary for placement in OV Level VI.

2. The case was remanded to correct an error on defendant's amended judgment of sentence. Although the trial court waived defendant's fees and costs at defendant's first sentencing, the amended judgment of sentence ordered defendant to pay a crime victim's rights assessment and court costs. After a resentencing hearing, the trial court issued a written order directing that the amended judgment of sentence itself be amended to indicate the waiver of fees and costs. However, there was no evidence that an amended judgment of sentence was ever issued, and remand was necessary for such an amendment to be made.

3. Even when no errors in scoring a defendant's OVs or PRVs are identified, the defendant is entitled to a remand for possible resentencing under the procedure of *United States v Crosby*, 397 F3d 103 (CA 2, 2005), if the trial court was constrained by the sentencing guidelines when it imposed its sentence on the defendant. A trial court is no longer bound to impose a sentence within the guidelines range in the absence of a substantial and compelling reason for departure. Before *Lockridge*, a trial court that imposed a sentence within the guidelines range may have been constrained by the unconstitutional application of Michigan's sentencing guidelines, which are now merely advisory under *Lockridge*. According to *Lockridge*, a trial court may depart

from the guidelines range without having to articulate a substantial and compelling reason for departure, and its sentence will be reviewed for reasonableness.

4. There was no evidence of vindictiveness in the trial court's decision to resentence defendant for being a felon in possession of a firearm to a sentence more severe than the sentence it imposed at defendant's initial sentencing. The trial court rebutted the presumption of vindictiveness that arises when the same judge resentences a defendant to a sentence longer than the one first imposed because the trial court explained its reasons for imposing the longer sentence.

5. PRV 7 is properly scored when a defendant has a felony-firearm conviction provided the felony-firearm conviction is not counted as one of the concurrent or subsequent felony offenses scored under PRV 7. Defendant claimed that PRV 7 should not have been scored solely because one of his convictions was for felony-firearm. Convictions that may not be used in calculating the number of a defendant's concurrent or subsequent felony convictions under PRV 7 include felony-firearm and convictions that result in a mandatory consecutive sentence. Although defendant's felony-firearm conviction could not be used as one of the convictions on which his PRV 7 score was based, defendant was convicted of five other felonies, none of which required a consecutive sentence, and which were therefore properly considered under PRV 7.

Remanded.

*Lee A. Somerville* and James Anthony Terrell, *in propria persona*, for defendant.

Before: TALBOT, P.J., and WILDER and FORT HOOD, JJ.

WILDER, J. A jury convicted defendant of three counts of assault with intent to do great bodily harm less than murder,[1] and one count each of resisting or obstructing a police officer,[2] felon in possession of a firearm (felon-in-possession),[3] and possession of a firearm during the

---

[1] MCL 750.84(1)(a).

[2] MCL 750.81d(1).

[3] MCL 750.224f(1).

commission of a felony (felony-firearm).[4] The trial court originally sentenced defendant as a fourth-offense habitual offender[5] to prison terms of 30 to 50 years for each assault conviction, 5 to 15 years for the resisting or obstructing conviction, 2 to 5 years for the felon-in-possession conviction, and 2 years for the felony-firearm conviction. The judgment of sentence indicated that the sentence for one of the assault convictions was consecutive to the sentence for the felony-firearm conviction, which was concurrent with the remaining sentences. In a prior appeal, this Court affirmed defendant's convictions, but vacated his sentences and remanded for resentencing because of "issues regarding defendant's habitual offender status that need resolution and because of the errors associated with the sentencing departure . . . ."[6] On remand, the trial court resentenced defendant as a second-offense habitual offender,[7] to prison terms of 95 months to 15 years for each assault conviction, 1 to 2 years for the resisting or obstructing conviction, 5 to 7½ years for the felon-in-possession conviction, and 2 years for the felony-firearm conviction. The amended judgment of sentence, again, reflects that defendant's sentence for one of the assault convictions is consecutive to the sentence for the felony-firearm conviction, which is itself concurrent with the remaining sentences. Defendant again appeals as of right, challenging the sentences imposed on remand. We remand for proceedings consistent with this opinion and for correction of the amended judgment of sentence to reflect the waiver of fees and costs.

---

[4] MCL 750.227b(1).

[5] MCL 769.12.

[6] *People v Terrell*, unpublished opinion per curiam of the Court of Appeals, issued September 24, 2013 (Docket No. 302135), p 17.

[7] MCL 769.10.

Defendant's convictions arise from a shootout with the Detroit police. This Court delineated the following relevant facts in its prior opinion:

The shootout occurred after a minivan carrying defendant and his friend, Devon Gary, pulled over to the side of the road while being followed by a marked police cruiser, although the cruiser's emergency lights and siren had not been activated. The police had been following the minivan based on suspicious behavior by its occupants and suspected drunk driving. A second police vehicle, unmarked, pulled up behind the marked police cruiser. Defendant was a passenger in the minivan and, according to police testimony, defendant leaped out of the minivan's passenger-side sliding door and opened fire on police with an AK-47 assault rifle. The police officers returned fire, discharging their .40 caliber weapons 40 times based on the number of shell casings found at the scene. Gary, who was unarmed and had also exited the minivan, was shot dead and defendant was struck in the leg by a bullet, but he managed to escape.

Defendant first stopped briefly at a friend's house, then stayed a few days with his girlfriend, who helped treat the wound, and defendant eventually went down to Memphis, Tennessee, where he had friends and family, and where he sought medical assistance in a hospital emergency room for the bullet wound. A month later, defendant went to Des Moines, Iowa, where he had resided off and on in past years. He was arrested in Iowa. Defendant took the stand in his own defense and admitted that he was in the minivan with Gary, who went by the name Kano, but defendant denied displaying, pointing, or firing any weapon at the police before the police started shooting. An AK-47 was found a short distance from the scene of the shootout, but well beyond the spot that Kano fell dead. Five shell casings that were not discharged from the officers' guns were found at the scene, although the expert on ballistics could not definitively connect the casings to the AK-47. DNA evidence placed defendant in the minivan, and a video captured by

the marked police cruiser's camera showed someone exiting the minivan's sliding door carrying a weapon.

The minivan involved in the incident belonged to a married couple. The husband had been at a gas pump filling the minivan's tank at a Marathon station a few hours before the shootout, while his wife was inside paying, when he was approached by two young males. The taller of the two men was wielding an AK-47 assault rifle. The husband bolted toward the gas station's entrance, yelling at the men to just take the vehicle. The rifleman then chased the husband in the direction of the gas station's front door. As the husband was entering the front door of the station in his attempt to escape the rifleman, his wife was exiting the station, and a female bystander, who had been waiting to catch a bus, was stationed near the Marathon's front door. At that moment, a gunshot was heard. The husband testified that he felt a bullet graze his jacket, and a bullet struck the female bystander, causing a minor injury. The wife escaped by running down the block. The two perpetrators then drove off in the minivan. Kano was identified by defendant's uncle as the gun-toting man seen in a video still captured by a gas station camera. The couple could not identify defendant in a lineup, nor at trial, as having participated in the crime. The bystander had also failed to identify defendant in a lineup and at the preliminary examination, although she claimed at trial that defendant, while not wielding a weapon, was the shorter man at the gas station who had been involved in the crime. Defendant denied being at the Marathon station that night and claimed that Kano gave him a ride in the minivan shortly before the shootout occurred. Defendant was acquitted of all charges arising out of the events at the gas station, either by jury verdict or directed verdict.[8]

Defendant was originally charged with three counts of assault with intent to commit murder,[9] but he was

---

[8] *Terrell*, unpub op at 1-3.

[9] MCL 750.83.

convicted of three counts of the lesser offense of assault with intent to do great bodily harm less than murder.[10]

At sentencing, the prosecutor argued that the trial court should impose a sentence that exceeded the sentencing guidelines range. When imposing the sentence, the trial court, without stating that it was departing from the guidelines range, noted the "highly assaultive nature" of the offenses, defendant's lack of remorse, and defendant's inability to be rehabilitated. Thereafter, the trial court completed a guidelines departure form in which it cited defendant's lack of remorse and his inability to be rehabilitated as reasons to exceed the guidelines range, which was 38 to 152 months for each of defendant's assault with intent to do great bodily harm convictions, as enhanced for a fourth-offense habitual offender. The trial court sentenced defendant as a fourth-offense habitual offender[11] to 30 to 50 years' imprisonment for each assault conviction, 5 to 15 years' imprisonment for the resisting or obstructing conviction, 2 to 5 years' imprisonment for the felon-in-possession conviction, and a 2-year term of imprisonment for the felony-firearm conviction.[12] The trial court expressly declined to impose any costs or fees, mentioning defendant's indigent status.

On September 24, 2013, this Court affirmed defendant's convictions, but vacated his sentences and remanded for resentencing.[13] This Court concluded that the habitual offender notice erroneously counted the same previous conviction twice, and the Court re-

[10] *Terrell*, unpub op at 1.

[11] MCL 769.12.

[12] The trial court also erroneously sentenced defendant for a felonious assault conviction, which was subsequently removed from defendant's judgment of sentence.

[13] *Terrell*, unpub op at 1, 17.

manded for a determination of whether defendant's Iowa conviction constituted a felony in Michigan.[14] Finally, this Court concluded that the trial court failed to meet the articulation requirement for an upward sentence departure by failing to justify the particular sentence departure with objective and verifiable reasons.[15]

On April 11, 2014, the parties appeared for resentencing. The parties agreed to reduce the score for prior record variable (PRV) 2 (prior low severity felony convictions) from 30 to 20 points because the Iowa conviction was actually for a misdemeanor offense. The attorneys agreed to score PRV 5 (prior misdemeanor convictions) at two points, PRV 6 (relationship to criminal justice system) at 10 points, and PRV 7 (subsequent or concurrent felony convictions) at 20 points. However, defendant himself objected to the score for PRV 7, contending that it did not apply because he was subject to a mandatory consecutive sentence for his felony-firearm conviction. The trial court questioned the attorneys about defendant's position, but they agreed that defendant's convictions for other felonies still supported a 20-point score for PRV 7. Thus, defendant's total PRV score was 52 points, placing him in PRV Level E (50-74 points) on the applicable sentencing grid.[16]

With regard to scoring the offense variables (OVs), the parties agreed that OV 1 (aggravated use of a weapon) was appropriately scored at 25 points. The parties agreed to reduce the score for OV 2 (lethal potential of weapon possessed or used) from 15 to 5

---

[14] *Id.* at 11-12.

[15] *Id.* at 13-17.

[16] MCL 777.65 (Class D sentencing grid). Assault with intent to do great bodily harm less than murder is a Class D offense.

points because the weapon was not fully automatic. The parties agreed that OV 3 (physical injury to victim) was appropriately scored at 100 points, that OV 4 (psychological injury to victim) was appropriately scored at 10 points, and that OV 9 (number of victims) was appropriately scored at 10 points. As for OV 12 (contemporaneous felonious criminal acts) and OV 13 (continuing pattern of criminal behavior), the parties agreed that while either offense variable could be scored at 25 points, both could not be scored. The parties also agreed that scoring either variable did not impact the outcome. The trial court scored OV 12 at zero points and OV 13 at 25 points. The parties agreed that OV 19 (threat to security of penal institution or court or interference with administration of justice or rendering of emergency services) was properly scored at 15 points. Thus, defendant received a total OV score of 190 points, placing him in OV Level VI (75+ points) on the applicable sentencing grid.[17] The defendant's habitual offender status was reduced to second-offense habitual offender because after remand, the prosecutor was precluded from adding other crimes to support the habitual offender enhancement. The prosecution could only correct errors, which included the Iowa misdemeanor conviction and the mistake of counting the same conviction twice. Therefore, defendant received a reduced guidelines range of 38 to 95 months for each of the assault with intent to do great bodily harm convictions, and lesser potential maximum sentences of 15 years for the assault convictions,[18] and 7½ years for the felon-in-possession conviction.[19]

---

[17] *Id.*

[18] One-and-one-half times the maximum sentence for a first conviction. See MCL 750.84(1)(a); MCL 769.10(1)(a).

[19] One-and-one-half times the maximum sentence for a first conviction. See MCL 750.224f(5); MCL 769.10(1)(a).

The prosecutor argued that the trial court should reimpose the sentences it previously imposed, citing defendant's disregard for the law, his attitude toward law enforcement, and his inability to conform his conduct and be rehabilitated, as evidenced by his 19 major violations while in prison.[20] Defense counsel argued to the contrary, contending that the location of the shell casings and the lack of damage to the police cars indicated someone fleeing the scene, not a standoff with the police. Defense counsel further argued that defendant's several prior convictions were not assault-ive or violent and noted that it was common for younger inmates to receive misconduct tickets. Defen-dant himself argued that his prison tickets were for minor things, not "monstrous stuff." Defendant also noted that he had obtained his GED while in prison and that he participated in prison programs, including a program dealing with substance abuse. Defendant denied ever shooting at the police and claimed that he was framed.

The trial court sentenced defendant to prison terms of 95 months to 15 years for each assault with intent to do great bodily harm less than murder conviction, 1 to 2 years for the resisting or obstructing conviction, 5 to 7½ years for the felon-in-possession conviction, and 2 years for the felony-firearm conviction.[21] As previously noted, the amended judgment of sentence indicates that the sentence for one of the assault convictions is

[20] Defendant received violations for incidents including an assault resulting in serious physical injury, and a charge of disobeying orders.

[21] The trial court also sentenced defendant to 4 to 6 years' imprison-ment for a felonious assault conviction. The Michigan Department of Corrections notified the court that defendant's judgment of sentence appeared to contain an erroneous conviction for felonious assault. On April 24, 2014, the judgment of sentence was amended to remove the conviction and sentence for felonious assault.

consecutive to the sentence for the felony-firearm conviction, and that the felony-firearm conviction is concurrent with the remaining sentences. The trial court also ordered $408 in state costs, $130 for the crime victim's rights assessment, and $600 in court costs.

On June 27, 2014, defendant filed an amended motion for resentencing and for the correction of the presentence investigation report (PSIR). Defendant alleged that he was entitled to resentencing for the following reasons: (1) the OV 3, OV 4, and OV 9 scores were derived, at least in part, from facts not found by a jury beyond a reasonable doubt; (2) although current Michigan law did not support defendant's claim that the OVs should not be scored, the Michigan Supreme Court had recently granted leave in *People v Lockridge*[22] to address this issue; (3) at resentencing, the trial court had increased defendant's felon-in-possession sentence to 5 to 7½ years' imprisonment from 2 to 5 years' imprisonment without explanation, giving rise to a presumption of vindictiveness; (4) fees and costs had previously been waived because of defendant's indigent status, and under *People v Cunningham*,[23] it was error to include costs at defendant's resentencing; (5) if costs were deemed correctly imposed, they should be deferred until defendant was paroled; and (6) if the scoring errors were deemed waived, defendant was deprived of the effective assistance of counsel. Defendant also claimed that he was entitled to correction of his PSIR to remove any refer-

[22] *People v Lockridge*, 304 Mich App 278; 849 NW2d 388 (2014), lv granted 496 Mich 852 (2014).

[23] *People v Cunningham*, 496 Mich 145; 852 NW2d 118 (2014), superseded by statute *People v Konopka (On Remand)*, 309 Mich App 345; 869 NW2d 651 (2015). Defendant previously filed a motion for resentencing on June 9, 2014. The amended motion for resentencing was filed to address the *Cunningham* decision, which was issued on June 18, 2014.

ences to a felonious assault conviction because he had
not been convicted of that offense.

On July 11, 2014, the trial court heard oral argu-
ments regarding the motion for resentencing. When
defendant raised the issue of the OV scores, the trial
court noted that defendant had preserved his *Lockridge*
challenge by raising it in the motion, but concluded that
it was premature to change the scoring in the absence of
a decision from our Supreme Court. Defendant had
amended the motion for resentencing because of the
intervening *Cunningham* decision, and the trial court
agreed to waive costs. The trial court also agreed to
strike references to carjacking and felonious assault
from the PSIR. Regarding the increased felon-in-
possession sentence, 5 to 7½ years from 2 to 5 years, the
trial court expressed surprise that defendant's sentence
represented an increase from the original sentence,
given that the 5-year minimum sentence was appropri-
ate when considering the guidelines range for defen-
dant's assault convictions. The prosecutor did not object
to defendant being resentenced to 2 to 5 years' impris-
onment for the felon-in-possession conviction, but in
order to foreclose the possibility of an additional resen-
tencing, the trial court surmised that a clerical error
was responsible for the lower initial sentence reflected
in the original judgment of sentence and denied defen-
dant's motion to reinstate the lower sentence. On
July 15, 2014, the trial court signed an order reflecting
its rulings on defendant's motion for resentencing.

Defendant first argues that the trial court engaged in
judicial fact-finding when scoring OVs 3, 4, and 9 of the
sentencing guidelines, and that therefore, he is entitled
to resentencing under *Alleyne v United States*.[24] We
disagree that resentencing is necessarily required.

---

[24] *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314
(2013).

As this Court recently explained in *People v Stokes*,[25] our Supreme Court, in *People v Lockridge*,[26] held that Michigan's sentencing scheme "violates the Sixth Amendment right to a jury trial because it requires 'judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the "mandatory minimum" sentence under *Alleyne*.'"[27] "[O]ur Supreme Court concluded that the appropriate remedy was to render Michigan's sentencing guidelines merely advisory."[28] Accordingly, our Supreme Court "sever[ed] MCL 769.34(2) to the extent that it is mandatory and [struck] down the requirement of a 'substantial and compelling reason' to depart from the guidelines range in MCL 769.34(3)."[29] "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness."[30] However, sentencing courts must "continue to consult the applicable guidelines range and take it into account when imposing a sentence."[31]

As explained in *Stokes*, the *Lockridge* Court described the procedure to be used when considering unpreserved *Alleyne*-based challenges, which are subject to plain-error review.[32] Regarding unpreserved *Alleyne* claims, our Supreme Court ruled that a defen-

---

[25] *People v Stokes*, 312 Mich App 181; 877 NW2d 752 (2015).

[26] *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

[27] *Stokes*, 312 Mich App at 193-194, quoting *Lockridge*, 498 Mich at 364.

[28] *Stokes*, 312 Mich App at 195, citing *Lockridge*, 498 Mich at 399.

[29] *Lockridge*, 498 Mich at 391.

[30] *Id.* at 392.

[31] *Id.*

[32] *Stokes*, 312 Mich App at 197.

dant suffers no prejudice in cases

> in which (1) facts admitted by the defendant and (2) facts found by the jury were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced. In those cases, because the defendant suffered no prejudice from any error, there is no plain error and no further inquiry is required."[33]

Our Supreme Court further held that

> all defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry.[34]

Relying on *United States v Crosby*,[35] our Supreme Court held that

> in cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is yes, the court shall order resentencing.[36]

Our Supreme Court articulated the precise procedure to be followed, based on the procedure adopted in *Crosby*, which includes providing the defendant with an opportunity to inform the court that he or she will not seek resentencing.[37]

---

[33] *Lockridge*, 498 Mich at 394-395.

[34] *Id.* at 395.

[35] *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005).

[36] *Lockridge*, 498 Mich at 397.

[37] *Stokes*, 312 Mich App at 198.

Unlike *Lockridge*, *Stokes* involved a preserved claim of error.[38] The Court in *Stokes* held that a preserved, nonstructural error is subject to the harmless beyond a reasonable doubt test.[39] Similarly, in the instant case, if we were to apply pre-*Lockridge* precedent, defendant's claim would be considered preserved because he raised the *Alleyne* issue in his motion for resentencing.[40] We find that nothing in *Lockridge* compels a different conclusion. Accordingly, we review defendant's claim for harmless error beyond a reasonable doubt.

Defendant conceded at his sentencing hearing that OVs 3, 4, and 9 were properly scored, and he does not dispute on appeal that the guidelines were properly scored under pre-*Lockridge* caselaw. Defendant now claims, however, that based on *Lockridge*, the scoring of these OVs was not supported by the jury's verdict. Defendant's OV score totaled 190 points, placing him in OV Level VI (75+ points) on the applicable sentencing grid.[41] Excluding the challenged OVs, defendant's total OV score would have been 70 points. Therefore, if any one of the challenged OVs was admitted by defendant or supported by the jury's verdict, then any judicial fact-finding regarding the other two OVs would not affect the range of defendant's minimum sentence.

Whether defendant admitted the facts necessary to support the scoring of OVs 3, 4, and 9[42] is of no

---

[38] *Id.*

[39] *Id.* at 198.

[40] See *People v Kimble*, 470 Mich 305, 310-311; 684 NW2d 669 (2004) ("[I]f the sentence is within the appropriate guidelines sentence range, it is only appealable if there was a scoring error or inaccurate information was relied upon in determining the sentence and the issue was raised at sentencing, in a motion for resentencing, or in a motion to remand.").

[41] MCL 777.65.

[42] For the same reason that we concluded defendant did not waive the issue, we conclude that his agreement to the scoring was not an

consequence because the jury's verdict supported the scoring of OV 9.[43] Under OV 9, 10 points are assigned if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ."[44] MCL 777.39(2)(a) provides: "Count each person who was placed in danger of physical injury or loss of life or property as a victim." The jury found defendant guilty of assaulting three different officers. Therefore, scoring OV 9 for two to nine victims was supported by the jury's verdict. Defendant's argument that there was only one victim for each assault is unpersuasive. The jury clearly found that three officers were placed in danger when defendant opened fire.[45] Accordingly, with these 10 points, defendant's total OV score was 80 points, keeping him in OV Level VI (75+ points) on the applicable sentencing grid.[46] As a result, any judicial fact-finding regarding OVs 3 and 4 did not affect defendant's minimum sentence guidelines range.

In *Stokes*, this Court concluded that where judicially found facts increased the minimum sentence guidelines range, the proper remedy was to remand and follow the *Crosby* procedure to determine whether the error was harmless.[47] In this case, however, any judicial fact-finding did not increase the minimum sen-

admission for *Lockridge* purposes. Rather, it could reasonably be interpreted as only an admission that the OVs were supported by a preponderance of the evidence.

[43] The prosecution conceded at oral argument that the facts necessary to score OVs 3 and 4 were not found by the jury.

[44] MCL 777.39(1)(c).

[45] See *People v Morson*, 471 Mich 248, 262; 685 NW2d 203 (2004) (concluding that 10 points were properly assessed under OV 9 when, although only one person was actually robbed, the person who was standing nearby and responded to the calls for help was also "placed in danger of injury or loss of life" during the armed robbery).

[46] MCL 777.65.

[47] *Stokes*, 312 Mich App at 198.

tence guidelines range because the jury verdict supported a score placing defendant at OV Level VI (75+ points). Nonetheless, we adopt the remedy crafted in *Stokes* as the appropriate remedy here, because regardless that judicial fact-finding did *not* increase defendant's minimum sentence guidelines range, the trial court's compulsory use of the guidelines was erroneous in light of *Lockridge*.[48] Here, the trial court was not obligated to sentence defendant within the minimum sentence guidelines range. Instead, the trial court was permitted to depart from the guidelines range without articulating a substantial and compelling reason, as long as the resulting sentence was itself reasonable.[49] Therefore, we conclude that a remand to engage in the *Crosby* procedure is necessary to determine whether the error resulting from the compulsory use of the guidelines was harmless.[50] As discussed in *Stokes*, our Supreme Court's agreement with the remand analysis in *Crosby* indicates that the *Crosby* procedure would apply to both preserved and unpreserved errors.[51] In addition, there is no logical reason why the *Crosby* procedure would apply to unpreserved errors, but not to preserved errors.[52] A defendant who preserves his or her claim of error should be entitled to

---

[48] See *United States v Fagans*, 406 F3d 138, 140-141 (CA 2, 2005) (remanding for resentencing even though judicial fact-finding did not increase the sentence guidelines range, because the compulsory use of the federal sentencing guidelines was erroneous).

[49] *Lockridge*, 498 Mich at 391-392.

[50] See *Stokes*, 312 Mich App at 200. We decline the prosecution's invitation to review the sentencing hearing to determine whether there was any indication that the trial court felt constrained by the guidelines because, at the time of sentencing, the guidelines were mandatory.

[51] *Id.* See *Lockridge*, 498 Mich at 395-396, quoting *Crosby*, 397 F3d at 117-118.

[52] *Stokes*, 312 Mich App at 200.

at least as much constitutional protection as a defendant who does not preserve his or her claim.

Accordingly, we remand for the trial court to follow the *Crosby* procedure outlined in *Lockridge*. Defendant is entitled to avoid resentencing by promptly notifying the trial court of his intent to do so.[53] "If notification is not received in a timely manner," the trial court should continue with the *Crosby* procedure articulated in *Lockridge*.[54]

Defendant next seeks reinstatement of his original sentence of 2 to 5 years' imprisonment for felon in possession of a firearm, arguing that the increased sentence of 5 to 7½ years that was imposed on remand is impermissibly vindictive. Defendant does not challenge the propriety of this sentence on any ground except vindictiveness. A presumption of vindictiveness arises when a defendant is resentenced by the same judge and the second sentence is longer than the first.[55] If the trial court states the reasons for the increase at the resentencing, the presumption may be overcome.[56]

The record does not support defendant's argument that the increased sentence was motivated by vindictiveness. Contrary to what defendant asserts, the trial court explained its reasons for imposing the higher sentence by expressing surprise that it had imposed a lesser sentence originally, explaining that it considered the five-year minimum sentence in relation to the guidelines range for defendant's assault conviction, and determining that a five-year minimum sentence was appropriate in consideration of that range. Because defendant does not dispute that computation,

---

[53] *Lockridge*, 498 Mich at 398.

[54] *Id.* See also *Stokes*, 312 Mich App at 203.

[55] *People v Colon*, 250 Mich App 59, 66; 644 NW2d 790 (2002).

[56] *Id.*

because the trial court's reasons for imposing the enhanced sentence at resentencing establish that the sentence was not motivated by vindictiveness, and because defendant does not otherwise challenge the propriety of the enhanced sentence in light of his habitual offender status, defendant has failed to demonstrate that resentencing is required on this ground.

Defendant also challenges the trial court's assessment of fees and costs, as reflected in the amended judgment of sentence dated April 24, 2014. At defendant's original sentencing, the trial court agreed to waive all fees and costs in light of defendant's indigent status. However, the amended judgment of sentence issued on remand contained assessments of fees and costs. Defendant filed a motion to correct the amended judgment of sentence, and the trial court issued an order dated July 15, 2014, in which it agreed to waive all fees and costs in accordance with its decision at the original sentencing. However, there is no indication that a corrected judgment of sentence was issued. Accordingly, we remand for the ministerial task of correcting the judgment of sentence to reflect the waiver of fees and costs.

Lastly, in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant argues that he is entitled to resentencing because the trial court erred by scoring 20 points for prior record variable (PRV) 7. There is no merit to this issue. MCL 777.57(1)(a) directs a score of 20 points for PRV 7 if a defendant has two or more subsequent or concurrent felony convictions, but MCL 777.57(2)(b) and (c) preclude the court from scoring "a felony-firearm conviction," or "a concurrent felony conviction if a mandatory consecutive sentence or a consecutive sentence imposed under section 7401(3) of the

public health code, 1978 PA 368, MCL 333.7401, will result from that conviction." Defendant argues that because he had a concurrent felony-firearm conviction, the trial court was not permitted to score PRV 7. We disagree.

Defendant's argument is directed at the interpretation of the legislative sentencing guidelines, which presents a legal question that we review de novo.[57] The instructions for PRV 7 only precluded the trial court from relying on the felony-firearm conviction for purposes of scoring PRV 7. The instructions did not preclude the court from relying on defendant's remaining felony convictions. In addition to his felony-firearm conviction, defendant stood convicted of three counts of assault with intent to do great bodily harm less than murder, resisting or obstructing a police officer, and felon in possession of a firearm, all of which are felonies and none of which resulted in a consecutive sentence.[58] Thus, defendant had at least two concurrent felony convictions that could be considered for purposes of PRV 7. Therefore, the trial court properly assigned 20 points to PRV 7.[59]

Remanded for proceedings consistent with this opinion and for ministerial correction of the judgment of

---

[57] *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

[58] We note that the amended judgment of sentence appears to incorrectly indicate that the sentence for one of the assault convictions is consecutive to the sentence for the felony-firearm conviction, which is itself concurrent with the other sentences. Generally, a sentence for a felony-firearm conviction is to be consecutive with and precede the sentence for the felony conviction. MCL 750.227b(3). Defendant may raise this issue on remand.

[59] Having found no error in scoring PRV 7, we similarly reject defendant's suggestion that counsel was ineffective. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

sentence to reflect the waiver of fees and costs in accordance with the trial court's July 15, 2014 order.[60] We do not retain jurisdiction.

TALBOT, P.J., and FORT HOOD, J., concurred with WILDER, J.

---

[60] Defendant also asserts that this case should be reassigned to a different judge for resentencing based on the trial court's decision to increase defendant's sentence for the felon-in-possession conviction and the trial court's scoring of PRV 7. Having concluded that these do not constitute grounds for resentencing, we reject this argument. Further, given that we are remanding for the trial court to follow the *Crosby* procedure articulated in *Lockridge*, it is appropriate for the same judge to determine whether he would have imposed a materially different sentence but for the constitutional error.