# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

RYAN KEITH LEWIS,

       Defendant-Appellant.

UNPUBLISHED
December 6, 2016

No.   328044
Wayne Circuit Court
LC No.   14-009641-FH

Before:  GADOLA, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of first-degree home invasion, MCL 750.110a(2), unlawfully driving away an automobile, MCL 750.413, and larceny in a building, MCL 750.360.  The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 10 to 25 years' imprisonment for the first-degree home invasion conviction, 2 to 10 years' imprisonment for the unlawfully driving away an automobile conviction, and 2 to 10 years' imprisonment for the larceny in a building conviction.  For the reasons set forth in this opinion, we affirm the convictions of defendant, but remand for further proceedings consistent with this opinion.

This case arises from defendant's unauthorized entry into the home of Odessa Wash[1] on August 22, 2014, and continuing through August 24, 2014.  Testimony revealed that Wash lived with her husband who was in hospice care at the time of the incident.  On occasion, Wash would ask defendant to come over to help with lawn and home maintenance as well as help with the care of her husband.  Wash's granddaughter, Neferteria Gray, would visit "every couple of days" to check on her grandparents' well-being.

Ms. Gray testified at trial that beginning on August 22, and continuing on until August 24, she repeatedly telephoned 9-1-1 reporting that defendant was removing items from her grandmother's home and garage.  Gray also testified and the 9-1-1-tapes[2] confirmed that she

---

[1] The record reveals that Ms. Wash passed away on the second day of trial.

[2] The record reveals that Ms. Gray made numerous 9-1-1- calls.  However, the record does not disclose exactly when the police finally arrived at the home of Ms. Wash.  Furthermore, because

-1-

reported that defendant had taken her 1998 Dodge Durango, and the only way he had access to the keys to the automobile would have been by going into Gray's purse which was located inside her grandmother's home.

Defendant testified that he and Gray were "husband and wife under Islam" and accordingly he had permission to enter the home. Defendant testified that he entered Ms. Wash's home on August 22, 2014 at approximately 6:00 p.m. with "one of [his] little Muslim brothers" to get "kufis" made. Defendant further testified that he had the keys to the house and got angry because there was a "homosexual" present in the home and because "homosexuality is against his religion," defendant left the home to "cool down." When defendant returned to the home he testified that he and Gray had another argument, though the specifics of the argument are unclear.

To bolster his claim that he and Gray were "husband and wife under Islam," defendant offered the testimony of his mother Lillian Newbern and his long-time friend Johnny Davis. Both Newbern and Davis testified that defendant and Gray believed themselves to be husband and wife, however, and quite unfortunately for defendant, neither of them could identify Gray, provide her name, or give any other relevant information about her.

On appeal, defendant first alleges that he received ineffective assistance of counsel because his counsel failed to interview and call Leslie Bronner (a.k.a.) Shareef Ali, who would have testified to the length of the relationship between defendant and Gray.

A defendant may preserve a claim of ineffective assistance of counsel for appellate review by making a motion for a new trial or for a *Ginther*[3] hearing in the lower court. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Defendant did not move for a new trial or a *Ginther* hearing in the trial court. Therefore, this issue is unpreserved for appellate review. See *id*.

An ineffective assistance of counsel claim is a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review a trial court's findings of fact for clear error, and questions of constitutional law de novo. *Id*. "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Lopez*, 305 Mich App at 693 (citation and quotation marks omitted). When a claim of ineffective assistance of counsel has not been preserved for appellate review, our review is limited to errors apparent on the record. *Id*.

Criminal defendants have a right to effective assistance of counsel under both the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. To prevail on an ineffective assistance of counsel claim, defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceeding would

_____

the two Detroit police officers who initially responded to the address failed to appear at trial, it is also unclear where the stolen items were found.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (citation and quotation marks omitted). Defendant bears the burden of persuasion in establishing a factual predicate for his claim. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). However, "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted). More specifically, trial counsel is presumed to implement sound trial strategy, *People v Gaines*, 306 Mich App 289, 310; 856 NW2d 222 (2014), and we "will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence," *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). Moreover, trial counsel's decision whether to call a witness at trial is presumed to be sound trial strategy. *People v Meissner*, 294 Mich App 438, 460; 812 NW2d 37 (2011). Generally, "the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (quotation marks and citation omitted). A substantial defense is one that could have made a difference in the trial's outcome. *Chapo*, 283 Mich App at 371.

For purposes of this appeal we accept, without deciding the proposition put forth by defendant that his counsel failed to interview the witness and that counsel's failure to call Bronner fell below an objective standard of reasonableness.

The crux of defendant's argument relative to Bronner is that by failing to interview and call Bronner as a witness, defendant was denied a substantial defense as there was little record that defendant had permission to enter the home. However, even if defendant had successfully shown that defense counsel's performance was deficient, defendant nevertheless fails to establish how he was deprived of a substantial defense that would have made a difference in the outcome of his trial. See *Chapo*, 283 Mich App at 371. At trial, defendant took the stand and testified in an attempt to establish his theory that Gray had fabricated the allegations of his unlawful entry and taking of personal property from Wash's home. Defendant testified that he and Gray were "husband and wife in Islam" and that they had gotten into a heated argument on the date of the incident.

As previously stated, Newbern and Davis also testified in an attempt to establish that defendant and Gray were in a relationship, but neither witness did much to bolster defendant's claim. Accordingly, defendant was able to produce his defense, however in hindsight it was not a particularly effective defense. "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). Additionally, to the extent defendant argues that he was prejudiced by weaknesses in Gray's testimony, questions of witness credibility are generally for the factfinder. *Unger*, 278 Mich App at 232. In this case, the trial judge acted as the factfinder and in his findings noted several relevant facts that he found especially important in making his determination. Specifically, the trial judge referenced the four 9-1-1 calls that Gray made where she physically described defendant to the operator, gave his name, and stated that she knew him as a handyman. Moreover, the trial judge noted that, in the calls, Gray stated that she saw

defendant stealing several items from Wash's home and that neither she nor Wash had given defendant permission to take the items from the home. It is evident from the record that the trial judge found Gray's testimony more credible when coupled with the supporting evidence of the 9-1-1 tapes. Therefore, the trial court had sufficient evidence to consider without Bronner being called as a witness. Accordingly, defendant has failed to show that the outcome of his proceedings would have been different had Bronner testified, and there are no errors apparent on the record to justify defendant's ineffective assistance of counsel claim. See *Vaughn*, 491 Mich at 669.

Next, defendant argues that he is entitled to a remand under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015) because the trial court impermissibly engaged in judicial fact-finding in scoring offense variable (OV) 16 and, but for the error, his sentencing guidelines range would have changed.

This Court reviews preserved *Lockridge* sentencing claims for harmless error beyond a reasonable doubt. *People v Terrell*, 312 Mich App 450, 464; 879 NW2d 294 (2015); see also *People v Stokes*, 312 Mich App 181, 198; 877 NW2d 752 (2015) (stating that a preserved *Lockridge* claim must be reviewed for harmless error). In order to determine whether the sentencing error was harmless, the case must be remanded to the trial court for a *Crosby*[4] hearing. *Stokes*, 312 Mich App at 198-199.

In *Lockridge*, 498 Mich at 373, the Michigan Supreme Court held that Michigan's prior mandatory sentencing guidelines scheme under MCL 769.34(2) constituted a violation of a defendant's Sixth Amendment right. The Court explained that the violation occurs when a trial court scores OVs based on facts not admitted by defendant or decided by a jury because it raises the "floor of the guidelines range." *Id*. at 373-374. Accordingly, in an attempt to remedy the unconstitutionality of the mandatory guidelines, the *Lockridge* Court severed MCL 769.34(2) to the extent that it made the sentencing guidelines mandatory and held that the guidelines are merely advisory. *Id*. at 391, 399. If a trial court would have imposed a materially different sentence but for this constitutional error, we must remand for resentencing. *Id*. at 397.

Defendant argues that OV 16 was improperly assessed at five points because the trial judge found facts not admitted by defendant or found by a jury, and if OV 16 had been assessed zero points, defendant's minimum sentencing guidelines range would have changed. We agree to the extent that the trial judge found facts not admitted by defendant or found by the trier of fact. MCL 777.46 provides the offense scoring for OV 16, which pertains to property obtained, damaged, lost, or destroyed. More specifically, MCL 777.46(1)(c) provides that if the property had a value of $1,000 or more, but not more than $20,000, the OV should be scored at five points. In this case, the trial court scored OV 16 at five points finding that the value of the property obtained by defendant was more than $1,000, but did not exceed $20,000.

As discussed above, defendant's trial was a bench trial. As such the trial court acted as the fact-finder. In order to establish a defendant's guilt for a charge of first-degree home

---

[4] *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005).

invasion, the prosecution must establish that (1) the defendant either breaks and enters a dwelling or enters a dwelling without permission (2) the defendant either intends to commit a felony, larceny, or assault in the dwelling when entering or at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault, and (3) the defendant, while entering, present in, or exiting the dwelling is armed with a dangerous weapon or another person is lawfully present in the dwelling.  See MCL 750.110a(2); *People v Wilder*, 485 Mich 35, 42-43; 780 NW2d 265 (2010).

Although the trial court found defendant guilty of first-degree home invasion, the value of property obtained is not an element of the crime.  See MCL 750.11a(2).  The trial court never explicitly stated how it arrived at value of the property obtained by defendant or what information it considered when scoring OV 16, but it is evident from its findings of fact that it considered the property taken when it found defendant guilty of first-degree home invasion.  Further, a review of the record does not reveal that defendant admitted to taking items let alone taking items in this amount.  Thus, defendant has successfully demonstrated that OV 16 was calculated using facts beyond those found by a jury or admitted by defendant.  See *Lockridge*, 498 Mich at 399.

Moreover, a reduction in defendant's OV score to account for the error would change the minimum guidelines range.  See *id*.  First-degree home invasion is a Class B offense under Michigan's Sentencing Guidelines.  Defendant's total OV score was 10 points placing him in OV Level II on the sentencing grid, and defendant's total prior record variable (PRV) score, based in part on his fourth habitual offender status, was 80 points placing him in PRV Level F.  See MCL 777.63.  Because of the fourth-habitual sentencing enhancement, the applicable minimum sentencing guidelines range was 78 to 260 months.  See *id*.  The trial court did not depart from this applicable minimum sentencing guidelines range.  However, if defendant's OV 16 score was reduced based on the trial court engaging in impermissible fact-finding, his OV level would be reduced to OV Level I reducing his minimum sentencing range to 72 to 240 months.  *Id*.  Thus, defendant is thereby entitled to a remand for a *Crosby* hearing in order for the trial court to determine if it would have imposed a materially different sentence but for the constitutional error.  See *Lockridge*, 498 Mich at 395, 397, 399.

Defendant's convictions are affirmed, but this case is remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.


/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens