# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

COREY DEQUAN BROOME,

Defendant-Appellant.

UNPUBLISHED
February 2, 2017

No. 328310
Oakland Circuit Court
LC No. 2015-253574-FC

Before: STEPHENS, P.J., and SAAD and METER, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84; felon in possession of a firearm (felon-in-possession), MCL 750.224f; carrying a concealed weapon (CCW), MCL 750.227; and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 25 to 50 years' imprisonment for the AWIGBH conviction, 5 to 25 years' imprisonment for the felon-in-possession conviction, 5 to 25 years' imprisonment for the CCW conviction, and two years' imprisonment for each of the felony-firearm convictions. We affirm defendant's convictions and sentences but remand for the ministerial task of clarifying the judgment of sentence.

The facts of this case are disturbing. The prosecution presented evidence that defendant ran a red light with his car, crashed into the victim's truck, and subsequently shot the victim after the victim offered to settle the matter without police involvement and was attempting to retrieve a cellular telephone in order to take down defendant's personal information.

Defendant first argues that he is entitled to a remand for resentencing because his 25-year mandatory minimum sentence, imposed pursuant to MCL 769.12(1)(a) because defendant was a fourth-offense habitual offender, constitutes cruel and unusual punishment under both the United States and Michigan Constitutions. We disagree.

Defendant failed to preserve this issue by raising it in the lower court. *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). Unpreserved claims of unconstitutionality based on cruel or unusual punishment are reviewed using the standard for plain error. *Id.* For reversal to be warranted, an error must have been "clear or obvious," and the error must have

-1-

affected defendant's "substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Defendant must have been prejudiced by the error. *Id*. Further, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of defendant's innocence." *Id*. at 763-764 (quotation marks, citation, and alteration omitted). This Court reviews de novo constitutional challenges to statutes. *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011).

The Eighth Amendment of the United States Constitution prohibits the infliction of "cruel and unusual punishments[.]" US Const, Am VIII. Similarly, the Michigan Constitution prohibits the infliction of "cruel *or* unusual punishment[.]" Const 1963, art I, § 16 (emphasis added). This Court accepts the logical rule that "[i]f a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *Benton*, 294 Mich App at 204 (quotation marks and citation omitted).

Defendant's argument that MCL 769.12(1)(a) unconstitutionally limited the sentencing judge's discretion and ability to consider defendant's circumstances or probability of rehabilitation is without merit. In Michigan, "the ultimate authority to provide penalties for criminal offenses is constitutionally vested in the Legislature." *People v Hegwood*, 465 Mich 432, 436; 636 NW2d 127 (2001). "[T]he Legislature may impose restrictions on a judge's exercise of discretion in imposing sentence." *Id*. at 440. In other words, the only discretion sentencing courts have is that which is given to them by the Legislature; courts do not, on their own, have discretion in imposing and administering sentences. See *People v Conat*, 238 Mich App 134, 147; 605 NW2d 49 (1999). MCL 769.12(1)(a) is not invalid, nor are the sentences imposed pursuant to it cruel or unusual, simply because the Legislature chose to limit the discretion available to the sentencing courts. See *People v Garza*, 469 Mich 431, 434; 670 NW2d 662 (2003) (explaining that the Legislature holds the power to "delegate various amounts of sentencing discretion to the judiciary," which includes the power to limit judicial discretion completely).

Typically, to determine whether a punishment is cruel or unusual under the Michigan Constitution, this Court employs a three-part test: (1) it examines "the severity of the sentence imposed and the gravity of the offense," (2) it compares "the penalty to penalties for other crimes under Michigan law," and (3) it compares "Michigan's penalty and penalties imposed for the same offense in other states." *Benton*, 294 Mich App at 204. Defendant has not attempted to demonstrate that his sentence is cruel or unusual in comparison to the penalties imposed for the same crimes in other states, and this Court need not do so for him. This Court has repeatedly stated that "an appellant may not simply announce his position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Bowling*, 299 Mich App at 559-560 (quotation marks and citations omitted).[1] Defendant does

---

[1] In terms of comparing his penalty to the penalties for other crimes in this state, defendant refers to penalties for certain drug offenses, which we do not find apposite.

argue, however, that although the United States Supreme Court has upheld "similar" habitual offender statutes in "other jurisdictions," MCL 769.12(1)(a) is distinguishable from each of those other statutes. Defendant has provided only one such statutory scheme for comparison—California's "three strikes" law—and this Court need not search for others. *Bowling*, 299 Mich App at 559-560.

Defendant's comparison of Michigan's statute and California's "three strikes" law is unpersuasive, because, firstly, the individual sentence itself is to be considered when a defendant claims cruel or unusual punishment. See, generally, *Benton*, 294 Mich App at 204-206. As noted *infra*, defendant's sentence was appropriate under the circumstances presented. Also, while defendant correctly notes that California's habitual offender policy differs from Michigan's, providing protections such as requiring that at least one prior conviction be violent, defendant incorrectly implies that it was because of these protections that the United States Supreme Court upheld the constitutionality of California's sentencing scheme in *Ewing v California*, 538 US 11; 123 S Ct 1179; 155 L Ed 2d 108 (2003). Contrary to defendant's argument, the Supreme Court in that case stated:

> Our traditional deference to legislative policy choices finds a corollary in the principle that the Constitution does not mandate adoption of any one penological theory. A sentence can have a variety of justifications, such as incapacitation, deterrence, retribution, or rehabilitation. Some or all of these justifications may play a role in a State's sentencing scheme. Selecting the sentencing rationales is generally a policy choice to be made by state legislatures, not federal courts.

> When the California Legislature enacted the three strikes law, it made a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one *serious or* violent crime. Nothing in the Eighth Amendment prohibits California from making that choice. To the contrary, our cases establish that States have a valid interest in deterring and segregating habitual criminals. . . . Recidivism has long been recognized as a legitimate basis for increased punishment.

> * * *

> To be sure, California's three strikes law has sparked controversy. Critics have doubted the law's wisdom, cost-efficiency, and effectiveness in reaching its goals. This criticism is appropriately directed at the legislature, which has primary responsibility for making the difficult policy choices that underlie any criminal sentencing scheme. We do not sit as a "superlegislature" to second-guess these policy choices. It is enough that the State of California has a reasonable basis for believing that dramatically enhanced sentences for habitual felons advance[] the goals of [its] criminal justice system in any substantial way. [*Id*. at 25, 27-28 (quotations marks and citations omitted; emphasis added).]

Michigan's habitual offender scheme has not been held unconstitutional, and it is the Legislature's chosen scheme. Defendant was sentenced appropriately, pursuant to the Legislature's prescribed guidelines. We note that defendant emphasizes his age of 23 years. As

the Michigan Supreme Court has recognized, however, courts are not required to consider a defendant's age in determining whether a sentence is disproportionate. *People v Lemons*, 454 Mich 234, 258-259; 562 NW2d 447 (1997). Here, defendant was convicted of a serious and violent crime, AWIGBH, and four separate firearms-related offenses. His presentence investigation report indicates that his adult criminal record includes multiple felonies and misdemeanors—including a conviction for driving without a license, a conviction for CCW, a conviction for attempting to resist arrest, a conviction for uttering counterfeit notes, and a conviction for felon-in-possession. Defendant's criminal record, extensive given that defendant has not been an adult for long, establishes a pattern of disregard for others and the law. The evidence indicates that his instant crimes were committed against a complete stranger and that he shot the victim from the back as the victim was walking away. Defendant's 27-year total minimum sentence allows for release when defendant is approximately 50 years old, and given the evidence supporting his conviction for the severe, violent crime of AWIGBH (which caused significant injury), this was appropriate. We find no plain error and no basis for a remand.

Next, defendant argues that he is entitled to a remand for resentencing because the trial court engaged in judicial fact-finding to arrive at his 25-year mandatory minimum sentence in violation of *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), and *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). We disagree.

After *Lockridge*, this Court reviews a preserved claim of sentencing error based on allegedly impermissible judicial fact-finding to determine if it qualifies as harmless beyond a reasonable doubt. *People v Terrell*, 312 Mich App 450, 464; 879 NW2d 294 (2015); *People v Stokes*, 312 Mich App 181, 198; 877 NW2d 752 (2015).

Defendant argues that he is entitled to resentencing because the sentencing judge, rather than a jury, made "findings of fact" to increase his mandatory minimum sentence in violation of *Alleyne* and *Lockridge*. Specifically, defendant argues that the sentencing court increased his mandatory minimum sentence by relying on the existence of prior convictions.

In *Alleyne*, 570 US at ___; 133 S Ct at 2155, the United States Supreme Court held that any fact that increases the mandatory minimum sentence for a crime is an "element" that must "be submitted to the jury and found beyond a reasonable doubt." In *Lockridge*, 498 Mich at 364, the Michigan Supreme Court held that "the rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by *Alleyne*, applies to Michigan's sentencing guidelines and renders them constitutionally deficient" and in violation of the Sixth Amendment to the extent that they "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . ." (citation omitted).

However, the existence of prior convictions is a well-recognized exception to the general requirement that any fact that increases the penalty for a crime must be either admitted by a defendant or found beyond a reasonable doubt by a jury. This exception was first articulated by the Supreme Court in *Apprendi*, 530 US at 490, wherein the Supreme Court explained that, "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

doubt" (emphasis added). The Michigan Supreme Court specifically noted this exception in *Lockridge*, 498 Mich at 370.

Defendant suggests that this Court eliminate the exception for prior convictions. According to defendant, because the exception, as articulated in *Apprendi*, was premised on the Supreme Court's holding in an earlier case, *Almendarez-Torres v United States*, 523 US 224; 118 S Ct 1219; 140 L Ed 2d 350 (1998), a case that defendant argues has been "eroded" by subsequent decisions "to the extent that it should no longer be considered binding precedent," the exception itself should no longer be considered good law. Defendant supports this argument, in part, on the four-justice *Almendarez-Torres* dissent, which challenged the majority's conclusion that prior convictions were not elements necessitating jury consideration. See *id*. at 257-258, 261. Defendant also argues that the Supreme Court questioned the exception in *Alleyne*, declining to consider the issue only because it was not raised by the parties in that case.

Defendant's arguments are unpersuasive. Indeed, defendant has failed to adequately explain how the exception, explicitly adopted by the United States Supreme Court in *Apprendi* and by the Michigan Supreme Court in *Lockridge*, does not remain good law. We note that one of the justices that defendant mentions in support of his argument that a majority of the United States Supreme Court no longer supports the exception is no longer with the Court. Under the circumstances, we again find no basis for a remand.

Next, defendant argues that the trial court erred when it ordered defendant to serve two two-year sentences for the felony-firearm offenses concurrently with each other but consecutively to his other sentences because the felony-firearm sentences can only run consecutively to the sentences for their listed predicate felonies.

The proper interpretation of MCL 750.227b, the felony-firearm statute, and its rules regarding consecutive sentencing is a question of law that we review de novo. See, generally, *People v Dimoski*, 286 Mich App 474, 476; 780 NW2d 896 (2009). The proper application of MCR 6.435(A), which governs ministerial correction of clerical errors, is also a question of law reviewed de novo. *People v Walters*, 266 Mich App 341, 346; 700 NW2d 424 (2005).

Defendant was convicted of AWIGBH (Count 1), felon-in-possession (Count 3), and CCW (Count 5). Defendant was also convicted of two counts of felony-firearm—one count each for his use of a firearm during the commission of his crimes of AWIGBH (Count 2) and felon-in-possession (Count 4). Defendant was sentenced to 25 to 50 years' imprisonment for AWIGBH, two terms of 5 to 25 years' imprisonment for felon-in-possession and CCW, and two terms of two years' imprisonment for felony-firearm. His judgment of sentence contains the following language, which defendant claims is improper:

> COUNTS 2, 4, & 5 ARE CONCURRENT TO EACH OTHER AND COUNTS 1,
> 3 AND 5 ARE CONCURRENT TO EACH OTHER. COUNTS 1 AND 3 ARE
> CONSECUTIVE TO COUNTS 2 AND 4.

Defendant is correct that, had the trial court imposed defendant's two-year felony-firearm sentences to be served consecutively to sentences for convictions other than their respective

-5-

predicate felonies, such an imposition would constitute error. As the Michigan Supreme Court has explained:

> From the plain language of the felony-firearm statute, it is evident that the Legislature intended that a felony-firearm sentence be consecutive only to the sentence for a specific underlying felony. Subsection 2 [now 3] clearly states that the felony-firearm sentence "shall be served consecutively with and preceding any term of imprisonment imposed for the conviction of the *felony* or attempt to commit the *felony*." It is evident that the emphasized language refers back to the predicate offense discussed in subsection 1, i.e., the offense during which the defendant possessed a firearm. No language in the statute permits consecutive sentencing with convictions other than the predicate offense. [*People v Clark*, 463 Mich 459, 463-464; 619 NW2d 538 (2000).]

However, we are not convinced that the sentencing judge intended to impose defendant's felony-firearm sentences to be served consecutively to the sentences for all three of his other offenses rather than, appropriately, to the sentences for their respective predicate felonies.

At sentencing, the trial judge made clear that the felony-firearm sentences were concurrent with each other. The trial court's statements at sentencing, combined with the language of the judgment of sentence, support the inference that neither felony-firearm sentence was to run consecutively to the CCW sentence. Indeed, the sentences could not be both consecutive to and concurrent with the CCW sentence. The felony-firearm sentences were to run consecutively to the sentences for defendant's AWIGBH and felon-in-possession convictions.

It is true that the language of the judgment of sentence is confusing and does not definitively pair the sentence for each felony-firearm conviction with its predicate felony, i.e., does not specify that the sentence for Count 2 is specifically consecutive to the sentence for Count 1, and that the sentence for Count 4 is specifically consecutive to the sentence for Count 3. However, it is a strained reading of the judgment of sentence, especially as a whole and in the context of the entire lower court file, that leads to any other conclusion. The felony information specified that defendant's felony-firearm charges were to accompany the predicate felonies of assault with intent to murder (the higher charge for the AWIGBH conviction) and felon-in-possession, and the first page of the judgment of sentence at least implies that Count 2 depends on predicate felony Count 1 and Count 4 depends on predicate felony Count 3. Also, for all practical purposes, any confusion over whether the sentence for Count 2 or Count 4 is intended to run consecutively to the sentence for Count 1 makes no difference. Each sentence is two years long, and one of them, regardless of which one, must run consecutively to defendant's 25-to-50-year sentence for his AWIGBH conviction.[2] The other runs concurrently, as indicated by the judgment of sentence.

---

[2] A sentence for felony-firearm is to precede the sentence for the predicate felony. MCL 750.227b(3).

It is apparent that the trial court did not intend to impose defendant's two-year felony-firearm sentences to run consecutively to sentences for convictions other than their respective predicate felonies. However, in light of the *Clark* Court's call to literal specificity—"[n]o language in the [felony-firearm] statute permits consecutive sentencing with convictions other than the predicate offense"—see *id*. at 464, we conclude that defendant is entitled to clarification of the terms of his sentence. Where a judgment of sentence contains a mistake, a remand to allow the trial court to amend the judgment is appropriate. MCR 6.435(A); *People v Katt*, 248 Mich App 282, 311-312; 639 NW2d 815 (2001). We remand to the trial court for the ministerial task of rewriting the "court recommendation" section of the judgment of sentence to clarify that the sentence for Count 2 is consecutive to the sentence for Count 1 and the sentence for Count 4 is consecutive to the sentence for Count 3 and to otherwise ensure that the section contains appropriate wording.

Defendant argues that defense counsel's affirmation of the trial court's "consecutive sentencing" constituted ineffective assistance of counsel. Defendant's argument is wholly without merit. Defendant has not argued that his consecutive sentences were erroneously imposed. Indeed, they were not, and defense counsel therefore could not have affirmed the propriety of any improper consecutive sentencing. Defense counsel raised the issue of consecutive sentencing at defendant's sentencing hearing to ensure that the judgment of sentence accurately reflected the appropriate sentence. Defense counsel's attempts did not fall below any objective standard of reasonableness. *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003). To the extent defendant suggests that defense counsel's failure to object to the trial court's ambiguous phraseology was unreasonable, his claim also fails. Defendant has suffered no prejudice. *Id*.

We affirm defendant's convictions and sentences but remand for the ministerial tasks of correcting the judgment of sentence and transmitting the judgment to the Department of Corrections. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Henry William Saad
/s/ Patrick M. Meter