# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ISMAEL FIGUEROA,

        Defendant-Appellant.

UNPUBLISHED
September 15, 2016

No. 326803
Wayne Circuit Court
LC No. 14-009812-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAVIER ISMAEL FIGUEROA,

        Defendant-Appellant.

No. 326888
Wayne Circuit Court
LC No. 14-010428-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MONICA MARIE MALDONADO,

        Defendant-Appellant.

No. 326933
Wayne Circuit Court
LC No. 14-009812-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

VERONICA MARIE MALDONADO,

No. 327202
Wayne Circuit Court
LC No. 14-009812-FH

-1-

Defendant-Appellant.

Before: GADOLA, P.J., and WILDER and METER, JJ.

PER CURIAM.

In these consolidated appeals, defendants appeal as of right from their convictions of one count each of first-degree home invasion, MCL 750.110a(2), and two counts each of misdemeanor assault and battery, MCL 750.81, which followed a five-day, consolidated jury trial. Each defendant was sentenced to time served for the misdemeanor assault and battery convictions. On the other hand, regarding the first-degree home invasion convictions, the trial court sentenced defendant Ismael Figueroa (Ismael) to 2 to 20 years, defendant Javier Ismael Figueroa (Javier) to 3 to 20 years, defendant Monica Marie Maldonado (Monica) to 1½ to 20 years, and defendant Veronica Marie Maldonado (Veronica) to 1½ to 20 years. We affirm defendants' convictions but, in Dockets No. 326933 and 327202, remand to the trial court for further proceedings consistent with this opinion.

I. FACTUAL BACKGROUND

This case arises out of a familial dispute between Blanca Maldonado (Blanca), her son Antonio Medina (Antonio), and his live-in girlfriend, Diana Fernandez (Diana), which eventually escalated to involve defendants (all of whom are related to Blanca and Antonio). On October 9, 2014, Diana confronted Blanca, alleging that Blanca owed Diana rent money. Blanca indicated that she would no longer pay rent. The confrontation was evidently heated but, according to Diana and Antonio (who witnessed the confrontation), Diana never physically assaulted Blanca. After flagging down a passing police car, however, Blanca reported that Diana had "grabbed [her] by the hair and thrown [her] to the ground."

According to Antonio, two days later, around 10:00 p.m., his brothers (defendants Javier and Ismael) showed up unexpectedly at Antonio and Diana's apartment, along with Antonio's cousins (defendants Monica and Veronica, who are sisters), Angel Ortiz-Diaz,[1] a man named Alegio, and a woman who remains unidentified. Antonio went to the door and opened it. Standing in the doorway—and thereby physically blocking the entrance—Antonio spoke with Javier, Ismael, and Veronica. The group aggressively questioned Antonio about the October 9, 2014 confrontation between Diana and Blanca. Disliking Antonio's responses, Javier punched Antonio in the mouth. Antonio stumbled back a few steps into the house. He cocked his own fist back to throw a counter-punch, but "[t]hey all charged towards" him, with Javier and Ismael in the lead. Antonio was "bombarded" by Javier, Ismael, Monica, Veronica, Angel, and Alegio. The door was forced open so violently that the "door stopper" broke and the doorknob left a dent in the wall. Antonio was pushed back approximately 19 feet into his living room, where Ismael, Javier, Angel, and Alegio pinned him face-down over the armrest of a couch with his face

---

[1] Angel was a codefendant in the trial court but was acquitted of all charges.

pushed into the couch cushions. Helpless to resist, Antonio was punched in the back of the head repeatedly and "[t]ased on the back of [his] leg." His eyeglasses were broken, and he felt "a sharp object hit [his] rib," which he later discovered to be a crowbar that the assailants left behind. Because of his position, he was unable to see who tased him and could not say whether either Monica or Veronica struck him while he was pinned on the couch. The assault abruptly ended when Diana released the couple's pitbull, which had been locked in the kitchen, and the assailants fled in fear.

The police were called and arrived roughly 30 minutes later. Antonio "refused EMS," but he received treatment at Detroit Receiving Hospital later that evening, where he was diagnosed with a bruised rib, a "chest wall contusion," and was provided pain medication. No "Taser prongs" were found "in" him, nor were any puncture wounds discovered. About "a day or two" later, he "went to the VA" and received further treatment, including more pain medication.

Diana witnessed the incident from inside the home. Her trial testimony regarding the incident was mostly consistent with that of Antonio but added details about what Antonio was unable to see while pinned on the living room couch. Diana confirmed that it was Ismael, Javier, Angel, and Alegio who physically pinned Antonio on the couch and punched him. One of them also hit Antonio with the crowbar, although Diana could not specify which one. Diana retrieved a cordless telephone from the bedroom and dialed 911, but Monica ran up, called Diana "bitch," slapped the phone out of her hand while she was talking with the 911 dispatcher, and then punched her in the eye. Veronica also punched Diana, then Monica and Veronica proceeded to strike Diana repeatedly in the head and stomach. Diana was left with a black eye, a broken blood vessel within her eye, and a split lip. After assaulting Diana, Monica and Veronica went over to the couch and punched the prone Antonio, as well. Eventually, Diana was able to release her pitbull. During the ensuing chaos she escaped through a back door, fled to a neighbor's house, and called the police. Defendants were subsequently arrested and convicted as described *supra*. Their instant appeals ensued.

## II. ANALYSIS

### A. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant Ismael argues that his trial counsel performed ineffectively by failing to request a jury instruction on misdemeanor breaking and entering, MCL 750.115, which is a lesser included offense of first-degree home invasion. On that basis, Ismael argues that his first-degree home invasion conviction must be reversed. We disagree.

Because Ismael failed to move for either a new trial or a *Ginther*[2] hearing in the trial court, this issue is not properly preserved, see *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000), and our review is consequently for any error apparent on the record, see *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). "Whether

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. A defendant must also show that the result that did occur was fundamentally unfair or unreliable. [*Lockett*, 295 Mich App at 187 (citations omitted).]

The "reviewing court must not evaluate counsel's decisions with the benefit of hindsight," but should "ensure that counsel's actions provided the defendant with the modicum of representation" constitutionally required. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004), citing *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Whether to request a jury instruction regarding a lesser included offense is a matter of trial strategy. *People v Sardy*, 216 Mich App 111, 116; 549 NW2d 23 (1996). "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Thus, there is a "strong presumption that trial counsel's performance was strategic," and "[w]e will not substitute our judgment for that of counsel on matters of trial strategy[.]" *Id.* at 242-243.

Although he is correct that misdemeanor breaking and entering is a necessarily included lesser offense of first-degree home invasion, *People v Silver*, 466 Mich 386, 392; 646 NW2d 150 (2002), Ismael fails to recognize that "[t]he decision to proceed with an all or nothing defense is a legitimate trial strategy," *People v Nickson*, 120 Mich App 681, 687; 327 NW2d 333 (1982). And despite the fact that he bears the burden of proving the factual predicate for his claim of ineffective assistance, see *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), Ismael cites no record evidence to rebut the strong presumption that his trial counsel's decisions in this regard were both strategic and effective. Thus, his instant claim of error necessarily fails.

## B. OFFENSE VARIABLES (OVs)

As explained in *People v Steanhouse*, 313 Mich App 1, 38; 880 NW2d 297 (2015), lv granted 499 Mich 934 (2016), notwithstanding *Lockridge*[3] this Court continues to apply the standard of review enunciated by *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), when reviewing a trial court's scoring of OVs. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *Hardy*, 494 Mich at 438. "Whether the facts, as found, are

---

[3] *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

### 1. OV 3

Defendants Ismael, Javier, and Veronica argue that the trial court erred by assessing them 10 points, rather than 5, under OV 3. They further argue that the resulting error entitles them to resentencing. We disagree.

We need not consider the substance of defendants' arguments regarding OV 3 because the purported five-point error could not have altered the applicable guidelines range. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required."). Pursuant to MCL 777.16f, first-degree home invasion (i.e., defendants' sentencing offense) qualifies as a crime against a person and a class "B" felony. Given their respective total OV scores, Ismael (total OV score of 31 points), Javier (total OV score of 41 points), and Veronica (total OV score of 31 points) each required a reduction of at least seven points to lower their applicable guidelines ranges. See MCL 777.63. Thus, their claims of error regarding OV 3 merit no relief. Even assuming, arguendo, that the trial court erred by assessing Ismael, Javier, and Veronica 10 points for OV 3 rather than 5 points,[4] they would nevertheless be unentitled to resentencing on that ground because the resultant error could not have altered the applicable guidelines range.

### 2. OV 4

Conversely, to the extent that defendants Ismael, Javier, and Veronica allege that the trial court erred by assessing them 10 points each for OV 4, those claims of error would, if established, alter the applicable guidelines range and therefore warrant resentencing. See *id.* at 89-91. Defendants argue that a preponderance of the evidence does not support the trial court's finding in support of OV 4. We disagree.

OV 4 is set forth by MCL 777.34, which provides,

---

[4] In any event, the trial court did not so err. Although 10 points are properly assessed under OV 3 for bodily injury "requiring" treatment only where there is evidence that medical treatment was "necessary," *People v Armstrong*, 305 Mich App 230, 246; 851 NW2d 856 (2014), here there was sufficient evidence from which the trial court could reasonably infer that treatment was, in fact, necessary. As this Court recently explained in *People v Maben*, ___ Mich App ___, ___; ___ NW2d ___ (2015); slip op at 3, because "[t]he phrase 'requiring medical treatment' for purposes of OV 3 "refers to the necessity for treatment and not the victim's success in obtaining treatment," it is unnecessary to establish that a victim "actually went to the hospital" when assessing 10 points under OV 3. If nothing else, there is ample evidence that it was "necessary" for Antonio to take pain medication for his injuries. We conclude that Antonio's act of ingesting pain medication, whether it was prescribed or not, in order to treat the pain from his bodily injuries, falls within the plain meaning of "medical treatment" under MCL 777.33. Thus, the trial court did not err by assessing defendants 10 points under OV 3.

(1) [OV] 4 is psychological injury to a victim. Score [OV] 4 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

      (a) Serious psychological injury requiring professional treatment occurred to a victim . . . 10 points

      (b) No serious psychological injury requiring professional treatment occurred to a victim . . . 0 points

(2) Score 10 points if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive.

Proof that the victim sought professional treatment for the psychological trauma suffered is unnecessary to support the assessment of points for OV 4, but "[t]here must be some evidence of psychological injury on the record to justify a 10-point score." *Lockett*, 295 Mich App at 183. Evidence of a victim's fear during the commission of the charged offense, or of lingering feelings of anger, fear, violation, or hurt afterwards, are sufficient to support the assessment of 10 points for OV 4. *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012).

Here, Diana testified that, at the time of trial, she was "still upset even at home" and "still crying." She "cried on every occasion when [an investigating detective] talked to her." Additionally, at sentencing Diana testified as follows:

      *Q*. I want to ask you about the impact of this situation on your emotional health. Could you describe that to the judge?

      *A*. It's not very good. I can't sleep at night. I've been staying up ever since this happened. I'm traumatized and scared somebody else is going to come into my house and do something else to me.

      \* \* \*

      *Q*. Have you sought any counseling behind this situation?

      *A*. I've been seeing my [medical] doctor.

      \* \* \*

      *Q*. And you've been complaining to him of this inability of you to sleep?

      *A*. Yes, I've been put on sleeping pills.

Similarly, at sentencing, Antonio read a prepared statement indicating that he remained "angry and hurt," "fearful in [his] own home," and had lost his job "due to mental stress[.]" Thus, there was sufficient evidence to support the trial court's assessment of 10 points for OV 4 as to defendants Ismael, Javier, and Veronica. See *Williams*, 298 Mich App at 124.

### 3. OV 14

Defendant Javier argues that the trial court erred by assessing him 10 points under OV 14. We disagree.

OV 14 is set forth as follows by MCL 777.44:

(1) [OV] 14 is the offender's role. Score [OV] 14 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

> (a) The offender was a leader in a multiple offender situation . . . 10 points

> (b) The offender was not a leader in a multiple offender situation . . . 0 points

(2) All of the following apply to scoring [OV] 14:

> (a) The entire criminal transaction should be considered when scoring this variable.

> (b) If 3 or more offenders were involved, more than 1 offender may be determined to have been a leader.

"A 'multiple offender situation' is one in which more than one person—up to several or many persons—participates in a violation of the law." *People v Ackah-Essien*, 311 Mich App 13, 38; 874 NW2d 172 (2015). The term "leader" is not statutorily defined, but it was construed in *People v Rhodes (On Remand)*, 305 Mich App 85, 90; 849 NW2d 417 (2014), by its dictionary definition:

> According to *Random House Webster's College Dictionary* (2001), a "leader" is defined in relevant part as "a person or thing that leads" or "a guiding or directing head, as of an army or political group." To "lead" is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting.

The trial court's findings need only be supported by a preponderance of the evidence, *Hardy*, 494 Mich at 438, and reasonable inferences from record evidence may be relied upon, *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012).

Given the fact that Javier was the first person to strike one of the victims, that he was one of the two people who led the rush into the victims' home, and that he was among those who pinned Antonio down on the couch while he was assaulted, it was reasonable for the trial judge to infer that Javier was—if not *the* leader—at least *a* leader in a multiple offender situation. See MCL 777.44(2)(b) ("If 3 or more offenders were involved, more than 1 offender may be determined to have been a leader."). Therefore, the trial court did not err by assessing Javier 10 points under OV 14.

## 4. OV 16

Although the issue is not contained in Javier's statement of questions presented, and he offers neither argument in support of it nor citation to authority, Javier's brief on appeal offers the conclusory assertion that OV 16 was improperly scored. By failing to offer any supporting argument or authority, Javier has abandoned this issue. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Furthermore, by failing to include it in his statement of questions presented, he has waived our consideration of the issue. See *People v Bennett*, 290 Mich App 465, 484 n 4; 802 NW2d 627 (2010). Waiver extinguishes any error, "thereby foreclosing appellate review." *People v McKinley*, 496 Mich 410, 418; 852 NW2d 770 (2014).

## C. SUFFICIENCY OF THE EVIDENCE

Defendant Monica argues that, even viewing the record evidence in the light most favorable to the prosecution, there was insufficient evidence to permit a rational trier of fact to conclude that Monica assaulted and battered Antonio. We disagree.

"A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo[.]" *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). The evidence is viewed in the "light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006).

> The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. [*People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted).]

This Court will not replace its judgment for that of the fact-finder regarding what inferences can be fairly drawn from the evidence. *People v Kosik*, 303 Mich App 146, 150-151; 841 NW2d 906 (2013).

"An assault may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). "Battery has been defined as an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id.* (quotation marks and citation omitted).

When asked whether she saw any of the female assailants "strike" Antonio, Diana responded, "Yes, I did," explaining that Monica and Veronica both struck Antonio. When asked "how" they struck him, Diana responded, "They were just like behind the guys punching him."

Contrary to Monica's argument on appeal, the above testimony was sufficient to permit a rational trier of fact to conclude that she was guilty of misdemeanor assault and battery. According to Diana, Monica struck Antonio. It is reasonable to infer from the record evidence that the contact was intentional, unconsented, and harmful or offensive, and thus that it

constituted a battery. Moreover, "every battery necessarily includes an assault because a battery is the very consummation of the assault." *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011) (quotation marks and citation omitted). Hence, there was sufficient evidence to support the jury's verdict.[5]

## D. *ALLEYNE*[6] ERROR

Next, defendants Monica and Veronica contend that they are entitled to a *Crosby*[7] remand because the floor of their respective guidelines ranges were raised by the trial court's reliance on judicially found facts, i.e., that *Alleyne* error occurred. We agree.

Neither Monica nor Veronica raised an *Alleyne*-related objection in the trial court. As such, this issue is unpreserved and is reviewed for plain error. See *People v Terrell*, 312 Mich App 450, 464; 879 NW2d 294 (2015). As summarized in *Steanhouse*, 313 Mich App at 321, the *Lockridge* Court

> held that the rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348, 147 L Ed 2d 435 (2000), as extended by *Alleyne*[], applies to Michigan's sentencing guidelines and renders them constitutionally deficient. The Court explained that to the extent that OVs scored on the basis of facts not admitted by the defendant or necessarily found by the jury verdict increase the floor of the guidelines range, i.e., the defendant's "mandatory minimum" sentence, that procedure violates the Sixth Amendment. Accordingly, to remedy the constitutional violation, the Court severed MCL 769.34(2) to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory. The Court also struck down the requirement in MCL 769.34(3) that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure. [Quotation marks, citations, and brackets omitted.]

---

[5] To the extent that Monica argues that it was "impossible" for her to strike the prone Antonio while four men were in the way pinning him to the couch, her argument is entirely unconvincing. We see no reason why such a battery would be factually impossible. On the contrary, life experience and common sense indicate that, during a physical altercation involving several people, it is altogether possible for one person to make physical contact with another despite the presence of others standing in the way. In any event, we will not replace our judgment for that of the jury regarding what inferences can be fairly drawn from the evidence. See *Kosik*, 303 Mich App at 150-151.

[6] *Alleyne v United States*, 133 S Ct 2151; 186 L Ed 2d 314 (2013).

[7] *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005), abrogated in part as recognized by *People v Stokes*, 312 Mich App 181, 199-200; 877 NW2d 752 (2015).

Hence, this Court must analyze whether, in scoring OVs that increased the floor of the guidelines range, the trial court relied on facts neither "*necessarily* found by the jury" nor "*formally* admitted by the defendant *to the court*, in a plea or in testimony or by stipulation or by some similar or analogous route." *People v Garnes*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 324035); slip op at 3. If a defendant can demonstrate (1) "that [his or her] guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment," and (2) that the resulting sentence was not an upward departure, the defendant "establish[es] a threshold showing of the potential for plain error sufficient to warrant a [*Crosby*] remand[.]" *People v Lockridge*, 498 Mich 358, 395; 870 NW2d 502 (2015).

As in *Garnes*, here Monica and Veronica's scores of 10 points for OV 4 were supported by judicially found facts. Serious psychological injury to a victim that may require professional treatment is not an element of first-degree home invasion, *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010), nor is it an element of misdemeanor assault and battery, see *People v Meissner*, 294 Mich App 438, 453-454; 812 NW2d 37 (2011). Therefore, the existence of such psychological injury is not a fact that was necessarily found by the jury. See *Garnes*, ___ Mich App at ___; slip op at 3. Likewise, neither Monica nor Veronica made a formal in-court admission to having caused a victim serious psychological injury. Thus, the trial court's finding that such an injury occurred was judicially made.

With OV 4 scored at 10 points, Monica and Veronica each had a total OV score of 31, which, coupled with their PRV scores of zero, provided a guideline range of 15 to 25 months under MCL 777.63. Their respective minimum sentences of 18 months fell within that guideline range; thus, neither Monica nor Veronica received an upward departure sentence. Without the 10 points they were assessed for OV 4, Monica and Veronica's total OV scores would have been 21 and yielded lowered guideline ranges of 12 to 20 months. Consequently, Monica and Veronica have each established a threshold showing of potential plain error sufficient to warrant a *Crosby* remand. See *Lockridge*, 498 Mich at 395.

Accordingly, in Dockets No. 326933 and 327202, we remand to the trial court under the *Crosby* procedure. "Given the possibility that defendant[s] could receive a more severe sentence, [they] should be provided the opportunity to avoid resentencing if that is [their] desire." See *Steanhouse*, 313 Mich App at 327. Either "[d]efendant may elect to forgo resentencing by providing the trial court with prompt notice of h[er] intention to do so. If notification is not received in a timely manner, the trial court shall continue with the *Crosby* remand procedure as explained in *Lockridge*." See *id.* (quotation marks and citations omitted).

### E. DIRECTED VERDICT

Premised on the assertion that she *made* such a motion, defendant Veronica argues that the trial court erred by denying her motion for a directed verdict regarding the charge of first-

degree home invasion. Because Veronica never made such a motion,[8] her instant argument is fatally flawed. The trial court could not have committed error requiring reversal by refusing to grant a motion that Veronica never made. See *People v Gonzalez*, 256 Mich App 212, 224; 663 NW2d 499 (2003), disapproval on other grounds 469 Mich 967 (2003) ("[E]rror requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence[.]").

## F. GREAT WEIGHT OF THE EVIDENCE

Defendant Veronica next argues that she is entitled to a new trial because the jury verdict was against the great weight of the credible record evidence. In support, Veronica argues that Diana's testimony was "inherently unbelievable," fraught with inconsistencies, and "cut out of whole cloth for the purpose of using the government to punish family members [Diana] did not like." Thus, Veronica contends, we should discount Diana's testimony entirely, vacate Veronica's convictions of first-degree home invasion and misdemeanor assault and battery as against the great weight of the evidence, and remand this matter to the trial court for a new trial. We disagree.

Because Veronica did not request a new trial based on the great weight of the evidence in the trial court, this issue is unpreserved, *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011), and our review is for plain error affecting Veronica's substantial rights, *People v Reid (On Remand)*, 292 Mich App 508, 513; 810 NW2d 391 (2011). "A verdict is against the great weight of the evidence if the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow it to stand." *Id.* "[A]bsent exceptional circumstances, issues of witness credibility are for the jury, and the trial court may not substitute its view of the credibility 'for the constitutionally guaranteed jury determination thereof.' " *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998), quoting *Sloan v Kramer-Orloff Co*, 371 Mich 403, 411; 124 NW2d 255 (1963) (opinion of O'HARA, J.). Such "exceptional circumstances" are situations where the testimony (1) "contradicts indisputable physical facts or laws," (2) "is patently incredible or defies physical realities," (3) "is material and is so inherently implausible that it could not be believed by a reasonable juror," or (4) "has been seriously impeached" leaving the remainder of the prosecution's case "marked by uncertainties and discrepancies." *Lemmon*, 456 Mich at 643-644 (quotation marks and citations omitted). "If the evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions, the judge may not disturb the jury findings although his judgment might incline him the other way." *Id.* at 644 (quotation marks and citation omitted). Hence, as a general rule, "when testimony is in direct conflict and testimony supporting the verdict has been impeached, if 'it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it,' the credibility of witnesses is for the jury." *Id.* at 643, quoting *Anderson v Conterio*, 303 Mich 75, 79; 5 NW2d 572 (1942).

---

[8] Veronica was charged with several counts, the first of which was first-degree home invasion. Following the close of the prosecution's proofs, Veronica's attorney moved for "a directed verdict on Counts 2, 3, 4, 5, 6," and "on 9 and 10," but never on the first count.

In support of her instant claim of error, Veronica points out several discrepancies between Diana's testimony and her previous statements to law enforcement. Given such prior inconsistent statements by Diana, Veronica argues that Diana's testimony should be entirely discounted by this Court. Veronica further argues that, absent Diana's testimony, there is no evidence that Veronica physically struck Diana or Antonio.

We do not find that the inconsistencies between Diana's former statements and her trial testimony render that testimony "patently incredible," "so inherently implausible that it could not be believed by a reasonable juror," or so "seriously impeached" as to leave the remainder of the prosecution's case "marked by uncertainties and discrepancies." In any event, Veronica's argument fails to recognize that the material portions of Diana's testimony are entirely uncontroverted. In other words, there is no record evidence that *contradicts* Diana's testimony that, on the night of the home invasion incident, Veronica entered the home without permission, then battered both Diana and Antonio. There is, therefore, no evidence that preponderates heavily against the jury's verdict, and that verdict must be permitted to stand.

## G. ASSESSMENT OF COURT COSTS

Finally, based on our Supreme Court's decision in *People v Cunningham*, 496 Mich 145; 852 NW2d 118 (2014), superseded by statute as recognized by *Terrell*, 312 Mich App at 461, Veronica argues that the trial court lacked statutory authority to impose the $600 in court costs that were assessed against Veronica as part of her sentence. We disagree.

Veronica's reliance on *Cunningham* is misplaced because she fails to recognize that, since *Cunningham* was decided, the Legislature curatively amended the pertinent statute, MCL 769.1k, with such amendment effective October 17, 2014. *People v Konopka (On Remand)*, 309 Mich App 345, 354-355; 869 NW2d 651 (2015). As amended, MCL 769.1k(1)(b) provides, in pertinent part:

(b) The court may impose any or all of the following:

* * *

(*ii*) Any cost authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty.

(*iii*) Until 36 months after the date the amendatory act that added subsection (7)2 is enacted into law, *any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, including, but not limited to, the following*:

(A) Salaries and benefits for relevant court personnel.

(B) Goods and services necessary for the operation of the court.

(C) Necessary expenses for the operation and maintenance of court buildings and facilities. [Emphasis added.]

The amended language above "applies to all fines, costs, and assessments ordered under MCL 769.1k . . . after October 17, 2014, the effective date of the amendatory act." *Konopka (On Remand)*, 309 Mich App at 357. Thus, at the time Veronica was sentenced, on March 12, 2015, the trial court had statutory authority to assess her $600 in court costs under MCL 769.1k(1)(b)(*iii*) so long as those costs were reasonably related to the actual costs incurred by the trial court. See *id.* at 357-358.

Here, unlike the defendant in *Konopka*, see *id.* at 360, Veronica does not "specifically" dispute the reasonableness of the costs imposed; she merely argues that the trial court lacked statutory authority to impose such costs. "Because defendant failed to object when the trial court ordered her to pay costs and attorney fees, we review her challenge to the trial court's imposition of court costs for plain error." *Konopka (On Remand)*, 309 Mich App at 356. As such, for Veronica to avoid forfeiture of this issue, she bears the burden of demonstrating (1) that error occurred, (2) that such error was plain, and (3) that the plain error affected her substantial rights. See *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Not only has Veronica failed to *argue* that the trial court's assessment of costs was unreasonable in relation to the actual costs incurred, she has also failed to proffer any evidence that the court costs were unreasonable in that regard. Thus, she has failed to carry her burden of demonstrating plain error that would entitle her to relief.

## III. CONCLUSION

In sum, in Dockets No. 326803 and 326888, regarding defendants Ismael and Javier respectively, we affirm defendants' convictions and sentences. In Dockets No. 326933 and 327202, we affirm defendants Monica and Veronica's convictions but grant a *Crosby* remand. We do not retain jurisdiction over any of the above appeals.

/s/ Michael F. Gadola
/s/ Kurtis T. Wilder
/s/ Patrick M. Meter