# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
March 21, 2017

v

RICHARD DANIEL CLAY,

Defendant-Appellant.

No. 329692
St. Clair Circuit Court
LC No. 13-000472-FC

Before: TALBOT, C.J., and MURRAY and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his conviction, following a jury trial, of assault with intent to murder (AWIM), MCL 750.83. The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 30 to 75 years' imprisonment for his conviction. We affirm defendant's conviction, but remand for further proceedings pursuant to *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from defendant's assault of his neighbor, Jeremy Finch, in the basement of the Silver Pines Apartment Complex in Port Huron in 2012. Defendant asked Finch to assist him with moving a box in his storage unit in the basement. As Finch picked up the box, defendant stabbed him in the back and wrenched Finch's neck. Defendant then grabbed the utility knife Finch used for work and attempted to slit his throat. Defendant stomped on Finch's head and said, "Just die." Finch pretended to be dead in order to get defendant to stop.

Defendant was found by police in the apartment complex basement, bleeding from a self-inflicted wound on his right arm. He fled from police and was ultimately apprehended down the street from the apartment complex, armed with a knife.

After defendant was treated for his injuries, Port Huron Police Officer Dennis Huisman took him to the Port Huron Police Department for processing. While there, Huisman began asking defendant questions to elicit personal information, i.e., his name, date of birth, address, employment information. While being asked his employment information, defendant made the statement, "I tried to kill the guy. I had some serious issues going on there. I mean, he's my friend. I mean, he's never done a bad thing to me."

-1-

Defendant was then given a form advising him of his *Miranda*[1] rights, which he was asked to read aloud. After doing so, defendant signed the form and acknowledged that he understood his rights. Defendant then told Port Huron Police Detective Keith Merritt that he had consumed alcohol, Vicodin, and crack cocaine before attacking Finch, and that he attacked Finch because he felt Finch "had evil inside him."

At trial, defendant testified that he had not intended to kill Finch and denied stabbing him with the knife; however, on cross-examination he admitted to telling Merritt that he had stabbed Finch. The prosecution also played a clip from defendant's interview, during which defendant admitted to stabbing Finch.

Defendant was convicted and sentenced as described above. Defendant filed a claim of appeal nearly two years later; this Court eventually accepted defendant's delayed application for leave to appeal.[2] Defendant also filed a motion to remand with this Court on January 4, 2016, seeking a *Ginther*[3] hearing in the trial court to further develop the factual record for his ineffective assistance of counsel claim and for a *Crosby*[4] hearing in light of *Lockridge* because the trial court had engaged in impermissible judicial fact-finding. This Court denied defendant's motion, holding that the record did not require further factual development to review the issues on appeal.[5]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that he received the ineffective assistance of counsel on a number of grounds. We disagree.

A defendant may preserve a claim of ineffective assistance of counsel for appellate review by moving for a new trial or for a *Ginther* hearing in the lower court. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Because defendant did not move for a new trial or a *Ginther* hearing in the trial court, and this Court denied his motion for remand, our review is limited to errors apparent on the record. *Lopez*, 305 Mich App at 693.

An ineffective assistance of counsel claim is a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review a trial court's findings of fact for clear error, and questions of constitutional law de novo. *Id*. "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] *People v Clay*, unpublished order of the Court of Appeals, entered August 19, 2015 (Docket No. 328719).

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[4] *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005).

[5] *People v Clay*, unpublished order of the Court of Appeals, entered February 4, 2016 (Docket No. 329692).

has been made." *Lopez*, 305 Mich App at 693 (citation and quotation marks omitted). "If the record does not contain sufficient detail to support defendant's ineffective assistance claim, then he has effectively waived the issue." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

Criminal defendants have a right to effective assistance of counsel under both the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. To prevail on an ineffective assistance of counsel claim, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (citation and quotation marks omitted). However, "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted). The defendant bears the burden of establishing a factual predicate for his claim. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

## A. PRELIMINARY EXAMINATION

First, defendant argues that defense counsel provided ineffective assistance of counsel when he advised defendant to waive his right to a preliminary examination. We disagree.

Considering the weight of the evidence against defendant, i.e., witness testimony, physical evidence, and defendant's admissions of guilt, it was reasonable trial strategy for defense counsel to advise defendant to waive the preliminary examination. "[T]he primary function of a preliminary examination is to determine if a crime has been committed and, if so, if there is probable cause to believe that the defendant committed it." *People v McGee*, 258 Mich App 683, 696; 672 NW2d 191 (2003) (quotation marks omitted). The jury found defendant guilty beyond a reasonable doubt of AWIM, which demonstrates that sufficient evidence existed to bind defendant over on that charge because a lesser standard of probable cause is used at preliminary examination. See *id*. Thus, defendant fails to show how defense counsel's performance fell below an objective standard of reasonableness and that, but for the alleged error, the outcome would have been different. See *Vaughn*, 491 Mich at 669.

Additionally, defendant's argument that defense counsel should have used the preliminary examination as a means for establishing the need for a competency examination is untenable. As discussed earlier, the purpose of the preliminary examination is to determine whether a crime has been committed and, if so, whether probable cause exists to believe defendant committed the crime. *Id*. The purpose is not to determine defendant's competency to stand trial. A criminal defendant is presumed competent to stand trial, MCL 330.2020(1), and it is up to the court, defense counsel, or the prosecution to raise the issue of incompetence, MCL 330.2024. The issue of defendant's competence to stand trial or participate in other criminal proceedings may be raised at any time. MCR 6.125(B). Indeed, two forensic psychologists evaluated defendant before his trial began to determine his competency to stand trial and defendant was found competent. And defendant has not shown that an evaluation conducted at the same time as the preliminary examination would have resulted in a different

outcome. See *Vaughn*, 491 Mich at 669. Accordingly, defendant has failed to establish that defense counsel was ineffective for advising him to waive the preliminary examination.

### B. TRIAL STRATEGY

Next, defendant contends that defense counsel provided ineffective assistance of counsel when he failed to "have an overall strategy as to how he might deal with the fact that this case involved a Defendant suffering from profound mental illness exacerbated by drug use." More specifically, defendant argues that defense counsel failed to obtain an expert who could support an insanity defense, failed to request a competency evaluation, and failed to introduce defendant's mental health records. We disagree.

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). Additionally, "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Trial counsel is presumed to implement sound trial strategy, *People v Gaines*, 306 Mich App 289, 310; 856 NW2d 222 (2014), and this Court "will not substitute [its] judgment for that of counsel on matters of trial strategy, nor will [this Court] use the benefit of hindsight when assessing counsel's competence," *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). "A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004).

Contrary to defendant's assertion, defense counsel moved on April 4, 2013 for the appointment of an independent expert to conduct a competency evaluation of defendant. Ultimately, the trial court granted defendant's motion to retain an independent expert. At trial, defense counsel stated on the record that defendant had been independently evaluated by Dr. Michael Abrambsky. Additionally, defense counsel noted that he had the opportunity to review Dr. Abrambsky's findings with defendant and that he was not pursuing the insanity defense in light of those findings. Presumably, Dr. Abrambsky concluded that defendant was competent to stand trial.

Based on the record evidence, defense counsel reasonably determined, after adequate preparation and investigation, that an insanity defense would not be viable. See *Grant*, 470 Mich at 486. In order to establish an insanity defense, the defendant must show that, as the result of a mental illness[6] or mental retardation, he lacked the "substantial capacity either to appreciate the nature and quality or the wrongfulness of his . . . conduct or to conform his . . . conduct to the requirements of the law." MCL 768.21a(1); *People v Lacalamita*, 286 Mich App 467, 470; 780 NW2d 311 (2009). However, a mental illness, alone, does not constitute the defense of legal

---

[6] Mental illness is defined as "a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g).

insanity. MCL 768.21a(1). Moreover, a defendant "who was under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his . . . alleged offense is not considered to have been legally insane solely because of being under the influence of the alcohol or controlled substances." MCL 768.21a(2).

Thus, even if defense counsel had pursued the insanity defense or a defense based on defendant's mental health issues, defendant has not shown that such a defense would have been viable. Defense counsel was not ineffective for failing to advance a meritless position, *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010), and defense counsel's decision not to introduce defendant's mental health records is presumed to be a matter of trial strategy that this Court will not second-guess, *Unger*, 278 Mich App at 242-243; see also *Rockey*, 237 Mich App at 76.

Even assuming that defense counsel's performance was deficient, defendant nevertheless has failed to establish a factual predicate for how these alleged errors prejudiced him. See *Putman*, 309 Mich App at 248. Defendant fails to show that any other forensic psychologist would have concluded differently from the first two evaluators. Additionally, defendant does not reference the content of any of defendant's mental health records and their possible effect on the proceedings. Consequently, defendant has failed to establish a claim for ineffective assistance of counsel on this ground. See *Vaughn*, 491 Mich at 669.

## C. *WALKER* HEARING

Finally, defendant contends that defense counsel provided ineffective assistance of counsel when he failed to move for a *Walker*[7] hearing in order to challenge the admissibility of defendant's incriminating statements made to police, arguing that the statements were made in violation of *Miranda* and made involuntarily. We disagree.

As an initial matter, "[i]n order to establish ineffective assistance of counsel for failure to move to suppress a custodial statement made before the *Miranda* warnings were given, the defendant must show that he or she would have prevailed on the issue." *People v Comella*, 296 Mich App 643, 652-653; 823 NW2d 138 (2012). We look at the totality of the circumstances when determining whether a defendant was subjected to "custodial interrogation" within the context of *Miranda*. *People v Cortez*, 299 Mich App 679, 691; 832 NW2d 1 (2013). Interrogation, for purposes of *Miranda*, "refers to express questioning and to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *People v Anderson*, 209 Mich App 527, 532-533; 531 NW2d 780 (1995). See also *People v Henry (After Remand)*, 305 Mich App 127, 175; 854 NW2d 114 (2014) (BOONSTRA, J., *concurring*) (citing *Rhode Island v Innis*, 446 US 291, 300-301; 100 S Ct 1682; 64 L Ed 2d 297 (1980)). "However, the simple asking of a defendant's name is not interrogation or an investigative question requiring the issuance of *Miranda*

---

[7] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

warnings." *People v Armendarez*, 188 Mich App 61, 73; 468 NW2d 893 (1991) (citation omitted).

Defendant first challenges the admission of his statement to Huisman that he "tried to kill the guy" because defendant had not been given his *Miranda* warnings and was still under the influence of controlled substances and alcohol at the time. However, contrary to defendant's assertion, a review of the record reveals that Huisman was simply asking defendant's personal information for processing purposes. Because Huisman was not engaged in investigative questioning, but rather, was merely seeking defendant's personal information, he was not required to give defendant *Miranda* warnings. See *Armendarez*, 188 Mich App at 73. Accordingly, defendant's spontaneous statement was admissible and not barred by the Fifth Amendment, *Anderson*, 209 Mich App at 532. Defense counsel was not required to make what would have been a futile motion. *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011).

Next, defendant challenges as involuntary the statements he made to Merritt after he received *Miranda* warnings. Specifically, defendant argues that his statements were involuntary because of "drugs, mental illness, fatigue, etc.," and that defendant's request to speak with someone from Community Mental Health should be construed as a request for an attorney that should have suspended the interrogation. "Whether a defendant's statement was knowing, intelligent, and voluntary is a question of law, which the court must determine under the totality of the circumstances." *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005) (citation omitted). "[T]he voluntariness prong cannot be resolved in [a] defendant's favor absent evidence of police coercion or misconduct." *People v Howard*, 226 Mich App 528, 543; 575 NW2d 16 (1997). "Intoxication from alcohol or other substances can affect the validity of a waiver of Fifth Amendment rights, but is not dispositive." *Id*.

Our review of defendant's interview with Merritt reveals that defendant was coherent and alert and clearly and unambiguously expressed that he understood his rights. While defendant did express some hesitancy before signing the form, Merritt clearly expressed that it was defendant's decision. Thus, there is no evidence of police misconduct or coercion. Accordingly, we hold that defendant knowing, intelligently, and voluntarily waived his *Miranda* rights. See *Tierney*, 266 Mich App at 707.

With regard to defendant's argument regarding his request for a mental health worker, "after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Davis v United States*, 512 US 452, 461; 114 S Ct 2350; 129 L Ed 2d 362 (1994). "[I]nvocation of the *Miranda* right to counsel requires a statement that can reasonably be construed to be an expression of a desire for the assistance of counsel." *People v Adams*, 245 Mich App 226, 237; 627 NW2d 623 (2001). "If the accused makes a reference to an attorney and the reference is ambiguous or equivocal in that a reasonable police officer in light of the circumstances would have understood only that the accused might be invoking the right to counsel, the cessation of questioning is not required." *Id*. at 237-238. See also *Henry (After Remand)*, 305 Mich App at 168 (BOONSTRA, J., *concurring*). Defendant's request for a mental health worker cannot be construed as the unequivocal and unambiguous request for an attorney as contemplated in *Davis*. Accordingly,

any effort by defense counsel to challenge defendant's statements to police or to request a *Walker* hearing would have been futile. See *Fonville*, 291 Mich App at 384.

Additionally, defendant also fails to demonstrate how he was prejudiced by defense counsel's alleged error. Even without the admission of his incriminating statements, the weight of the evidence was strong based on witness testimony and physical evidence, and defendant has failed to show that the outcome would have been different. *Vaughn*, 491 Mich at 669.

## III. WITNESS SEQUESTRATION

Defendant contends that he is entitled to a new trial because Finch was not properly sequestered during his trial. Specifically, defendant argues that by allowing the victim to hear the other witnesses testify before he took the stand, Finch was able to "subtly prepare" for his testimony. We disagree.

On the first day of trial, defense counsel requested that the trial court sequester all the witnesses before they testify. The prosecution asked the trial court to allow the officer-in-charge and the victim to remain in the courtroom, noting that a victim had the right to be present at trial. A bench conference was held, but the record for the first day is silent regarding the trial court's ruling. However, on the second day of trial, the trial court addressed the sequestration issue. In particular, the trial court noted the existence of a constitutional provision granting a victim the right to be present at trial, and ruled that Finch had the right to be present during all the proceedings in defendant's case.

We review decisions regarding the sequestration of witnesses for an abuse of discretion. *People v Roberts*, 292 Mich App 492, 502-503; 808 NW2d 290 (2011). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Snyder*, 301 Mich App 99, 104; 835 NW2d 608 (2013) (quotation marks and citation omitted). Additionally, this Court reviews de novo questions of constitutional law. *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014). However, a preserved, nonconstitutional error does not require reversal unless it is more probable than not that the error was outcome determinative. See *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

Under the Michigan Constitution, crime victims have the right to attend court proceedings against the accused. In relevant part, Const 1963, art 1, § 24, provides:

(1) Crime victims, as defined by law, shall have the following rights, as provided by law:

* * *

The right to attend trial and all other court proceedings the accused has the right to attend.

Additionally, under the Crime Victim's Rights Act, MCL 780.761 provides:

-7-

The victim has the right to be present throughout the entire trial of the defendant, *unless the victim is going to be called as a witness. If the victim is going to be called as a witness, the court may, for good cause shown, order the victim to be sequestered until the victim first testifies.* The victim shall not be sequestered after he or she first testifies. [Emphasis added.]

The sequestration of witnesses is also set out by the Michigan Rules of Evidence. However, addressing the issue of the sequestration of witnesses only generally, MRE 615 states:

At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

"The purposes of sequestering a witness are to prevent him from coloring his testimony to conform with the testimony of another, and to aid in detecting testimony that is less than candid." *People v Meconi*, 277 Mich App 651, 654; 746 NW2d 881 (2008) (quotation marks and citations omitted).

Defendant argues that to the extent MCL 780.761 allows a trial court to sequester a crime victim during trial, it is inconsistent with Const 1963, art 1, § 24, and thus, unconstitutional. However, as both parties recognize, we may decide the issue on nonconstitutional grounds. See *id*. at 653 (stating that this Court may refrain from deciding a constitutional issue when the case can be decided on other grounds).

We are unable to determine from the record in this case whether defendant offered any "good cause" (under MCL 780.761) to sequester Finch until he testified. Consequently, we are unable to conclude that the trial court abused its discretion. Even assuming an abuse of discretion, however, our review of the record confirms that any such error was harmless.

The purpose of witness sequestration is to prevent an individual from coloring his testimony to conform to the testimony of another and to aid in detecting testimony that is less than candid. *Meconi*, 277 Mich App at 654. The record reflects, in comparing Finch's testimony to other witness testimony, that there were several similarities. However, these similarities were supported by defendant's own testimony. Specifically, defendant admitted that he and Finch were friends, that he lied to lure Finch into the basement, that he took a knife from another neighbor without his permission, and that he attacked Finch in the basement. Finch's testimony was also consistent with defendant's admissions during his recorded interview with Merritt, admitted at trial, in which defendant clearly confessed he had stabbed Finch and tried to kill him. Finch's testimony differed from his prior statements in some ways, and defense counsel cross-examined Finch on these points in an attempt to draw out the inconsistencies of Finch's in-court testimony and his prior statements to police officers.

In short, defendant has not demonstrated that Finch's testimony was "colored" by other witnesses' testimony. Accordingly, even if the trial court abused its discretion in allowing Finch

to remain in the courtroom (and assuming that Finch had no constitutional right to remain), the error was harmless. See *Lukity*, 460 Mich at 495-496. Because we are able to decide this issue on these nonconstitutional grounds, we decline to address the constitutionality of MCL 780.761.

## IV. SENTENCING ISSUES

Defendant also challenges his sentence, alleging an evidentiary error and a constitutional error. More specifically, defendant contends that, given the record evidence, the trial court erred when it scored offense variable (OV) 7 (aggravated physical abuse), and that he is entitled to a *Crosby* remand under *Lockridge* because the trial court impermissibly engaged in judicial fact-finding when it scored the OVs. We disagree that the trial court erred in scoring OV 7, but agree, as the prosecution concedes, that defendant is entitled to a *Crosby* remand under *Lockridge*.

Under a preserved evidentiary challenge, "the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *Id.* (citation and quotation marks omitted). However, "[w]hether the facts, as found, are adequate to satisfy the scoring conditions, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination." *McChester*, 310 Mich App at 358. "[I]f the trial court clearly erred in finding that a preponderance of the evidence supported one or more of the OVs or otherwise erred in applying the facts to the OVs, [*Hardy*, 494 Mich at 438], and if the scoring error resulted in the alteration of the minimum sentence range, [a defendant] would be entitled to resentencing, *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006)." *People v Biddles*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 326140); slip op at 4.

Additionally, we review preserved[8] *Lockridge* issues for harmless error beyond a reasonable doubt. *People v Terrell*, 312 Mich App 450, 464; 879 NW2d 294 (2015); see also *People v Stokes*, 312 Mich App 181, 198; 877 NW2d 752 (2015). If a defendant can establish a *Lockridge* error, he is entitled a *Crosby* hearing on remand for further inquiry regarding whether the error was harmless. *People v Stokes*, 312 Mich App 181, 198; 877 NW2d 752 (2015). Moreover, "[a] Sixth Amendment challenge presents a question of constitutional law that this Court reviews de novo." See *Lockridge*, 498 Mich at 373.

---

[8] Although defendant was sentenced prior to the issuance of *Lockridge*, a defendant may preserve a sentencing issue for appellate review at sentencing, in a motion for resentencing, or in a motion to remand. MCL 769.34(10); *People v Terrell*¸ 312 Mich App 450, 464 n 40; 879 NW2d 294 (2015). Defendant raised the issue of a *Lockridge* error in his motion to remand. We therefore treat this issue as preserved.

The *Biddles* Court provides the analytical framework that applies when both an evidentiary and a constitutional challenge are presented with regard to the scoring of the guidelines:

> When this Court is presented with an evidentiary *and* a constitutional challenge regarding the scoring of the guidelines, the evidentiary challenge must initially be entertained, because if it has merit and requires resentencing, the constitutional or *Lockridge* challenge becomes moot, as a defendant will receive the protections of *Lockridge* on resentencing. And if an evidentiary challenge does not succeed, then and only then should we entertain the constitutional challenge. [*Biddles*, ___ Mich App ___ at ____; slip op at 5.]

Defendant challenges the trial court's scoring of OV 7. In relevant part, MCL 777.37(1) provided at the time of defendant's sentencing:[9]

> (a) A victim was treated with sadism, torture, excessive brutality, or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense……………………………………………………………………….50 points

> (b) No victim was treated with sadism, torture, excessive brutality, or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense…………………………………………………………………………...0 points

Although, the prosecution provides two alternative grounds for why a 50-point score for OV 7 was proper, the trial court relied on the "excessive brutality" element when it scored OV 7. Thus, the issue is whether defendant treated Finch with "excessive brutality." In making this determination, the focus is on defendant's conduct. *People v Hunt*, 290 Mich App 317, 326; 810 NW2d 588 (2010). MCL 777.37 does not define "excessive brutality." Thus, "we presume that the Legislature intended for the words to have their ordinary meaning." MCL 8.3a; *Hardy*, 494 Mich at 440. This Court has previously defined the ordinary meaning of "excessive brutality" stating: "*Random House Webster's College Dictionary* (2d ed., 1997) defines 'excessive' as going beyond the usual, necessary, or proper limit or degree. 'Brutality' is defined as the quality of being brutal. *Id*. 'Brutal,' in turn, is defined as savage; cruel; inhuman or harsh; severe. *Id*. Thus, excessive brutality means savagery or cruelty beyond even the 'usual' brutality of a crime." *People v Glenn*, 295 Mich App 529, 533; 814 NW2d 686 (2012), rev'd on other grounds by *Hardy*, 494 Mich at 440.

---

[9] MCL 777.37(1)(a) and (b) have since been amended by 2015 PA 137, effective January 5, 2016, to read, respectively, that "a victim" or "no victim" "was treated with sadism, torture, excessive brutality or *similarly egregious* conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." (Emphasis added.) We review the trial court's decision in light of the version of the statute that existed at the time of defendant's sentencing. See *People v Doxey*, 263 Mich App 115, 122-123; 687 NW2d 360 (2004) (discussing retroactivity in sentencing statutes).

Evidence at trial established that defendant stabbed Finch in the back with a knife, grabbed Finch in a chokehold, attempted to slit his throat, and stomped on his head while saying, "Just die." This Court has held that a 50-point assessment of OV 7 was appropriate where the defendant choked the victim a number of times, cut her, dragged her, and kicked her in the head. *People v Wilson*, 265 Mich App 386, 396-398; 695 NW2d 351 (2005). By committing these acts, defendant engaged in conduct beyond the minimum necessary to commit AWIM. *Hardy*, 494 Mich at 443. Accordingly, the trial court properly assessed 50 points for OV 7, and defendant is not entitled to resentencing on this ground.

Defendant also raises a *Lockridge* claim, arguing that the trial court impermissibly engaged in judicial fact-finding when it scored OV 7, and thus, that he is entitled to a *Crosby* remand. The prosecution concedes that defendant is entitled to a *Crosby* remand on this basis. Our Supreme Court has held that Michigan's prior mandatory sentencing guidelines scheme under MCL 769.34(2) constituted a violation of a defendant's Sixth Amendment right. *Lockridge*, 498 Mich at 373. As a result, the guidelines are now advisory. *Id.* at 391, 399.

It is undisputed that defendant was sentenced before July 29, 2015, and that he is entitled to a *Crosby* remand. AWIM is a Class A offense under Michigan's Sentencing Guidelines. MCL 777.16d. Defendant's total prior record variable (PRV) score was 85 placing him in PRV Level F on the sentencing grid, and defendant's total OV score was 145 points placing him in OV Level VI. See MCL 777.62. Because of defendant's fourth habitual sentencing enhancement, the applicable minimum sentencing guidelines range was 270 months to 900 months. *Id.* If defendant's OV 7 score were removed to account for the trial court's impermissible fact-finding, defendant's OV level would be reduced to OV Level V, thereby reducing his minimum sentencing guidelines range to 225 months to 750 months. *Id.* Thus, defendant is entitled to a *Crosby* remand. See *Lockridge*, 498 Mich at 373-374. In sum, the trial court properly assessed 50 points for OV 7, but it impermissibly engaged in judicial fact-finding under *Lockridge*. Consequently, defendant is entitled to a *Crosby* remand.

We affirm defendant's conviction, but remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Mark T. Boonstra